United States Court of Appeals,

Fifth Circuit.

No. 93-7365.

MAGNOLIA FEDERAL BANK FOR SAVINGS, a Federal Savings Bank, Plaintiff-Appellant,

v.

UNITED STATES of America, et al., Defendants-Appellees.

Jan. 24, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before POLITZ, Chief Judge, JONES, Circuit Judge, and FULLAM[*], District Judge.

EDITH H. JONES, Circuit Judge:

Relying on Mississippi law, Magnolia Federal Bank for Savings ("Magnolia") sued the United States Small Business Administration ("SBA") for a declaratory judgment subordinating or extinguishing two SBA liens against certain real property upon which Magnolia also held a lien. The district court granted summary judgment for the SBA, equating Magnolia's effort with a desire to assert a state statute of limitations against the federal agency. The district court was only half right. Insofar as Magnolia's claim would subordinate rather than bar enforcement of SBA's liens for untimeliness, state law is properly invoked against the federal agency. The statute on which Magnolia relies does not, however, apply to the facts of this case. Consequently, the judgment against Magnolia must be affirmed.

---

[*]District Judge of the Eastern District of Pennsylvania, sitting by designation.

BACKGROUND

In 1964, Harold and Emma Bozied ("the Bozieds") obtained real property in Jackson, Mississippi by warranty deed. They also executed a deed of trust in favor of Bridges Loan and Investment Company.

In 1967, Harold Bozied obtained a $7,000 business loan from Gulf National Bank secured by a second deed of trust on the property. The loan had a stated maturity date of October 19, 1972; SBA guaranteed repayment of up to 75% of the loan balance.

In 1970, after Hurricane Camille, the Bozieds obtained a $16,000 disaster loan directly from the SBA, for which they executed a third deed of trust. That loan had a stated maturity date of March 18, 1980.

In 1972, the Bozieds filed a joint Chapter VII bankruptcy petition. In December 1972, following default on the Gulf National Bank loan, the SBA paid Gulf National 75% of the outstanding balance and received an assignment of that note and deed of trust. In February 1973, the Bozieds' personal liability on the SBA loan was discharged in bankruptcy.

In 1989, the successors in interest to the Bridges Loan and Investment Company note canceled the first deed of trust. All of the described title documents concerning the Bozieds' property were duly and timely recorded.

On July 17, 1991, SBA notified the Bozieds in writing that it intended to foreclose on its two deeds of trust. At that time, the Bozieds were negotiating to borrow and did borrow $43,000 from

2

Magnolia; as security for repayment of that loan, the couple executed a deed of trust in favor of Magnolia. During its title search, Magnolia discovered the two deeds of trust in favor of the SBA but determined that they were not clouds on title by operation of settled principles of Mississippi law. Many years had passed since the indebtedness secured by those deeds of trust reached their stated dates of maturity (1972 for the second deed of trust, 1980 for the third deed of trust).

In November 1991, the SBA scheduled a foreclosure sale on the property, provoking this suit by Magnolia for a declaratory judgment affirming the validity and priority of its lien over the SBA liens. From the district court's adverse summary judgment ruling, Magnolia has appealed.

DISCUSSION

Magnolia, like the appellants in the *Muirhead* case that was considered in tandem with this one[1], argued first that the SBA's right to foreclose was extinguished according to Mississippi law, which states that "[i]n all cases where the remedy at law to recover the debt shall be barred, the remedy in equity on the mortgage shall be barred."[2] Magnolia also contended that the SBA's liens should be subordinated to Magnolia's lien under Mississippi law regarding ancient mortgages. The district court ruled that the United States was not bound by state statutes of limitations and

---

[1]*Farmers Home Administration v. Muirhead,* No. 93-7414, --- F.3d ---- (5th Cir. Jan. 24, 1995).

[2]Miss.Ann.Code § 15-1-21.

further, that 28 U.S.C. § 2415(a), the federal statute of limitations limiting the government's right to bring a civil action on the underlying notes, did not cut off the SBA's right to foreclose on the deeds of trust. This court reviews *de novo* the trial court's conclusions of law.

Based on the analysis in *Muirhead,* which Magnolia does not here dispute, MISS.CODE ANN. § 15-1-21, a state statute of limitations governing actions on mortgages, is not binding on SBA as a federal agency.

Magnolia's argument that the SBA's liens should be subordinated to Magnolia's lien on the property raises a much different question, notwithstanding the trial court's conflation of this argument with the statute of limitations issue. The alternative argument relies on MISS.CODE ANN. § 89-5-19, which provides in pertinent part:

> **§ 89-5-19. When a lien appears by the record to be barred, it ceases.**
>
> Where the remedy to enforce any mortgage, deed of trust, or other lien on real or personal property which is recorded, appears on the face of the record to be barred by the statute of limitations (which, as to a series of notes or a note payable in installments, shall begin to run from and after the maturity date of the last note or last installment), the lien shall cease and have no effect as to creditors and subsequent purchasers for a valuable consideration without notice, unless within 6 (6) months after such remedy is so barred the fact that such mortgage, deed of trust, or lien has been renewed or extended be entered on the margin of the record thereof, by the creditor, debtor, or trustee, attested by the clerk, or a new mortgage, deed of trust, or lien, noting the fact of renewal or extension, be filed for record within such time. If the date of final maturity of such indebtedness so secured cannot be ascertained from the face of the record the same shall be deemed to be due one year from the date of the instrument securing the same for the purpose of this section.

Magnolia strenuously argues, and we agree that this case is controlled by the Supreme Court's holding in *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *see also United States v. Currituck Grain, Inc.,* 6 F.3d 200 (4th Cir.1993) (adopting North Carolina substantive commercial law as federal rule of decision for determining priority of FmHA's secured interest in grain). In *Kimbell Foods,* the Court sought

> to determine whether contractual liens arising from certain federal loan programs [administered by the SBA & FmHA] take precedence over private liens, in the absence of a federal statute setting priorities. To resolve this question, we must decide first whether federal or state law governs the controversies; and second, if federal law applies, whether this Court should fashion a uniform priority rule or incorporate state commercial law. We conclude that the source of law is federal, but that a national rule is unnecessary to protect the federal interests underlying the loan programs. Accordingly, we adopt state law as the appropriate federal rule for establishing the relative priority of these competing federal and private liens.

440 U.S. at 718, 99 S.Ct. at 1453.

*Kimbell Foods* identified three critical factors that bear upon whether federal common law or state law should fill in the gaps in federal loan programs. Applying these factors to the question whether state or federal common law should determine lien priorities when SBA and FmHA liens conflict with those of private creditors, the Court found: 1) that uniform nationwide standards favoring the United States' claims were not needed to ease program administration or protect the Federal Treasury from defaulting debtors, 440 U.S. at 729, 99 S.Ct. 1459; 2) that incorporating state law "would in no way hinder administration of the SBA and

5

FmHA loan programs," *id.*[3]; and 3) that creditors who "justifiably rely on state law to obtain superior liens would have their expectations thwarted whenever a federal contractual security interest suddenly appeared and took precedence." 440 U.S. at 739, 99 S.Ct. at 1464; *see also id.,* n. 42 ("Developing priority rules on a case-by-case basis, depending on the types of competing private liens involved, leaves creditors without the definite body of law they require in structuring sound business transactions."). *Kimbell Foods* strongly counsels that Mississippi law should be applied as the federal rule for establishing the relative priority of competing federal and private liens.[4] To state law we turn.

Title 89 of the Mississippi Code contains Mississippi statutes governing "Real and Personal Property." Chapter 5 of that title is entitled "Recording of Interests." Section 89-5-19 governs lien priorities when a creditor takes a position secured by a lien on real property at a time when an earlier creditor's lien on the same property appears on the face of the public record to be time-barred. In this situation, § 89-5-19 reverses the usual "race/notice" priority rule set out in § 89-5-5.

---

[3]*See also id.* at 733, 99 S.Ct. at 1461 ("Since there is no indication that variant state priority schemes would burden current methods of loan processing, we conclude that considerations of administrative convenience do no warrant adoption of a uniform federal law.").

[4]This case is virtually indistinguishable from *United States v. Currituck Grain, Inc.,* 6 F.3d 200 (4th Cir.1993), in which the Fourth Circuit, relying on *Kimbell Foods,* applied against the FmHA North Carolina's U.C.C. provision that extinguishes liens on certain agricultural products 18 months from the date of sale or delivery to a purchaser. N.C.Gen.Stat. § 44-69.1.

The SBA concedes that Magnolia's lien would take priority over the SBA's liens if the agency was merely another private lender. SBA contends, however, that the government's right to foreclose cannot be affected by Mississippi's statute of limitations, *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1939). SBA argues that § 89-5-19 is an extension of the limitations statute. SBA is mistaken. Unlike Section 15-1-21, the time-bar provision critical to the *Muirhead* case, Section 89-5-19, the provision at issue here, is not located in the statutes of limitations chapter of the Mississippi Code. It does not bar SBA from foreclosing to enforce its lien against the property, but rather dictates that

> the lien shall cease and have no effect *as to creditors and subsequent purchasers for valuable consideration without notice.*

MISS.CODE ANN. § 89-5-19 (emphasis added). Further, the statute allows for extension or renewals, if they are properly recorded within specified times, to prevent such a subordination. This provision of Mississippi's substantive law establishes an exception to the "race/notice" scheme for determining priority of recorded interests, not a statute of limitations.

The applicability of § 89-5-19 does not, however, salvage Magnolia's claim to priority over the ancient SBA liens. Magnolia argues that the statute essentially provides that because collection of SBA's *notes* was barred by 28 U.S.C. § 2415(a), the applicable federal statute of limitations, the SBA's liens must be subordinated. The statute does not expressly so state. Instead,

7

as noted above, it applies only

> "where the remedy to enforce any mortgage, deed of trust or other lien ... appears on the face of the record to be barred by the statute of limitations ...

Section 2415(a) bars the government's right to enforce the SBA notes, but not the remedy on SBA mortgages. *See Muirhead, supra.* Magnolia suggests that the statute "compresses" the time limitation applicable to enforcement of the security right with that applicable to the underlying note. Indeed it does. As a result, the fusion of those periods, which are one and the same for purposes of Mississippi's lien theory of mortgages, cannot be undone to suit Magnolia's position. The plain language of the statute does not fit a case like this, where the limitations bar on the note does not extinguish the remedy on the mortgage.

The court is sympathetic to Magnolia's policy arguments that decry the nullification, as to federal government mortgages, of a state law wisely enacted to promote the stability of land titles and transferability of real property. Nearly every state has passed laws to remove from land titles the dead hand of ancient mortgages. Mississippi can, however, amend its law.

CONCLUSION

For the reasons stated above, following *Kimbell Foods,* the Court finds that Mississippi law should be adopted as the federal rule of decision for determining the priority of the competing liens in this case. Section 89-5-19 does not, however, subordinate an ancient mortgage when the remedy to enforce that mortgage is, as here, not extinguished by the limitations period that governs the

8

underlying indebtedness. The judgment of the district court is *AFFIRMED.*