UNITED STATES of America, Plaintiff,

v.

HUGHES RANCH, INC., Michael B. Hughes, Sandra S. Hughes, Melvin C. Hughes, Joyce M. Hughes, Bank of Burwell, Clare Coulthard, Defendants.

United States of America, Plaintiff,

v.

Hughes Ranch, Inc., Michael B. Hughes, Sandra S. Hughes, Bank of Burwell, Defendants.

Nos. 4:94CV3098, 4:94CV3099.

United States District Court, D. Nebraska.

Jan. 21, 1999.

Steven A. Russell, Asst. U.S. Atty., Lincoln, NE, for plaintiff.

Keith I. Frederick, Omaha, NE, Donna F. Taylor, Neligh, NE, Martin P. Pelster, Croker, Huck Law Firm, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

These cases are consolidated.[1] They present interesting questions regarding the inter-

---

1. They are also old. Some of the defendants have been in and out of bankruptcy and the cases were stayed during the bankruptcy proceedings.

play between federal and state law when the United States seeks to foreclose (enforce) mortgages and security interests in federal court.

There are three pending motions for summary judgment. These motions are largely based upon uncontroverted material facts set forth in the pretrial conference order. There are other material facts, but they too are undisputed. As a result, all of the motions will be granted to one degree or another.

Hughes Ranch, Inc., Michael B. Hughes, Sandra S. Hughes, Melvin C. Hughes, and Joyce M. Hughes (collectively referred to as the "Hughes defendants") have filed a motion for summary judgment in which they contend that the government cannot seek a judgment against them because the statute of limitations has run. The government concedes that the statute of limitations has run as against Melvin C. Hughes and Joyce M. Hughes insofar as the government's prayer for a money judgment is concerned. Otherwise, the government contests the Hughes defendants' motion.

The government has filed a motion for summary judgment contending that it is entitled to a summary judgment on its foreclosure request and on its request for a money judgment against some of the defendants. The Hughes defendants contest the government's motion and argue that the government has been guilty of "unclean hands."

Clare Coulthard (Coulthard), alleging an interest in the real estate as the holder of tax sale certificates, has filed a motion for summary judgment contending that the tax sale certificates should be foreclosed and the real estate subject to the certificates sold to satisfy the certificates. The Hughes defendants contest this motion arguing that Coulthard failed to comply with Nebraska law as it regards the foreclosure of tax sale certificates. The government has not responded to the motion.

I will grant the Hughes defendants' motion insofar as the motion pertains to the government's claim for a money judgment. The Hughes defendants have no personal liability to the government because the statute of limitations ran before this case was filed.

Concluding that the statute of limitations relied upon by the Hughes defendants does not apply to foreclosure actions, I will grant the government's motion regarding foreclosure of the mortgages and security interests. I will deny the balance of the government's motion. As just noted, the statute of limitations has run on the government's claim for a money judgment as to the Hughes defendants.

Finally, I will grant Coulthard's motion for summary judgment. Coulthard is entitled to foreclosure of the tax sale certificates, and that claim has priority over the government's claim when it comes time to sell the real estate.

## I. FACTS

The material undisputed facts are these:

1. These are civil actions brought by the United States of America under the provisions of Title 28, United States Code, § 1345. (Filing 64,[2] Pretrial Conference Order, Uncontroverted Facts, ¶ 1 (hereinafter "PCO").) These suits were commenced on March 23, 1994. (*Id.*)

2. The defendant, Hughes Ranch, Inc., is a Nebraska corporation doing business at or near Burwell, Garfield County, Nebraska, within the jurisdiction of this court. (PCO ¶ 2.)

3. The defendants, Michael B. Hughes and Sandra S. Hughes, reside at or near Burwell, Garfield County, Nebraska, within the jurisdiction of this court. (PCO ¶ 3.)

4. The defendants, Melvin C. Hughes and Joyce M. Hughes, reside at or near Burwell, Garfield County, Nebraska, within the jurisdiction of this court. (PCO ¶ 4.)

5. The defendant, Bank of Burwell, Burwell, Nebraska, is a Nebraska corporation doing business at or near Burwell, Garfield County, Nebraska, within the jurisdiction of this court. The Bank of Burwell has previously filed a disclaimer in this action. (PCO ¶ 5 .) Essentially, the Bank of Burwell, as a subordinate creditor, has consented to the relief sought by the government.

---

**2.** In this opinion, all filing numbers refer to the case numbered 4:94CV3098.

6. The defendant, Clare Coulthard, resides at or near Chambers, Holt County, Nebraska, within the jurisdiction of this court. (PCO ¶ 6.)

7. On or about May 8, 1978, the defendants, Hughes Ranch, Inc., Michael B. Hughes, Sandra S. Hughes, Melvin C. Hughes and Joyce M. Hughes, executed and delivered to plaintiff, acting through the Farmers Home Administration, United States Department of Agriculture, their promissory notes whereby they promised to pay the plaintiff the sums of $370,330 and $29,670, with interest thereon at 8 percent and 3 percent per annum, respectively. As consideration for those notes, the plaintiff made loans to the defendants, Hughes Ranch, Inc., Michael B. Hughes, Sandra S. Hughes, Melvin C. Hughes and Joyce M. Hughes, pursuant to the provisions of the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921, *et seq.* (PCO ¶ 7.)

8. At the same time and place and as part of the same transaction, to secure the payment of the notes, the defendant, Hughes Ranch, Inc., executed and delivered to the plaintiff a security interest in the form of a real estate mortgage upon certain real estate in Garfield County, Nebraska, within the jurisdiction of this court, described as follows:

North Half (N1/2), Southeast Quarter (SE1/4), East Half of Southwest Quarter (E1/2SW1/4), and Southwest Quarter of Southwest Quarter (SW1/4SW1/4) of Section One (1); East Half of Northwest Quarter (E1/2NW1/4), West Half of Northeast Quarter (W1/2NE1/4), and Northeast Quarter of Northeast Quarter (NE1/4NE1/4), Southeast Quarter (SE1/4) and East Half of Southwest Quarter (E1/2SW1/4) of Section Twelve (12); All in Township Twenty Two (22) North, Range Fifteen (15).

That mortgage was recorded in the Office of the Register of Deeds of Garfield County, Nebraska, on May 9, 1978, in Book 30 of Mortgages at Page 409. (PCO ¶ 8.)

9. On or about May 1, 1980, the defendants, Hughes Ranch, Inc., Michael B. Hughes and Sandra S. Hughes, executed and delivered to plaintiff, acting through the Farmers Home Administration, United States Department of Agriculture, their promissory note whereby they promised to pay the plaintiff the sum of $123,800, with interest thereon at 11 percent per annum. As consideration for that note, the plaintiff made a loan to the defendants, Hughes Ranch, Inc., Michael B. Hughes and Sandra S. Hughes, pursuant to the provisions of the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921, *et seq.* (PCO ¶ 9.)

10. At the same time and place and as part of the same transaction, to secure the payment of the notes, the defendant, Hughes Ranch, Inc., executed and delivered to the plaintiff a security interest in the form of a real estate mortgage upon certain real estate in Garfield County, Nebraska, within the jurisdiction of this court, described as follows:

North half, Southeast quarter, East half of the Southwest quarter, Southwest quarter of the Southwest quarter of Section 1; East half of the Northwest quarter, West half of the Northeast quarter, Northeast quarter of the Northeast quarter, Southeast quarter, East half of the Southwest quarter of Section 12; All in Township 22, North Range 15, and, North half of the Northwest quarter of Section 5; North half, Southwest quarter, and North half of the Southeast Quarter of Section 6; all in Township 22, North, Range 14, and, All of Section 31; in Township 23, North, Range 14. All West of the 6th P.M. in Garfield County, Nebraska.

Additional real estate described in this mortgage has been previously liquidated. That mortgage was recorded in the Office of the Register of Deeds of Garfield County, Nebraska, on May 1, 1980, in Book 31 of Mortgages at Page 325, and re-recorded on May 15, 1980, in Book 31 of Mortgages at Page 334. (PCO ¶ 10.)

11. On or about September 26, 1980, the defendants, Hughes Ranch, Inc., Michael B. Hughes and Sandra S. Hughes, executed and delivered to plaintiff, acting through the Farmers Home Administration, United States Department of Agriculture, their promissory notes whereby they promised to pay the plaintiff the sums of $115,000 and $35,000, with interest thereon at the rate of 11 percent and 11.50 percent annum, respectively. As consideration for these promisso-

ry notes, the plaintiff made loans to the defendants, Hughes Ranch, Inc., Michael B. Hughes and Sandra S. Hughes, pursuant to the provisions of the Emergency Agricultural Credit Adjustment Act of 1978, 7 U.S.C., note preceding § 1961. (PCO ¶ 11.)

12. At the same time and place and as part of the same transaction to secure the payment of the notes, the defendant, Hughes Ranch, Inc., executed and delivered to the plaintiff a security interest in the form of a real estate mortgage upon certain real estate in Garfield County, Nebraska, within the jurisdiction of this court, as described as follows:

North Half, Southeast Quarter, East Half of the Southwest Quarter, Southwest Quarter of the Southwest Quarter of Section 1; East Half of the Northwest Quarter, West Half of the Northeast Quarter, Northeast Quarter of the Northeast Quarter, Southeast Quarter, East Half of the Southwest Quarter of Section 12; all in Township 22, North, Range 15, and North Half of the Northwest Quarter of Section 5; North Half, Southwest Quarter, and North Half of the Southeast Quarter of Section 6, in Township 22, Range 14, and All of Section 31; in Township 23, North, Range 14. All West of the 6th P.M. in Garfield County, Nebraska.

Additional real estate described in this mortgage has been liquidated. That mortgage was recorded in the Office of the Register of Deeds of Garfield County, Nebraska, on September 29, 1980, in Book 31 of Mortgages at Page 406. (PCO ¶ 12.)

13. To secure payment of the promissory notes set forth in paragraphs 9 and 11 hereof, the defendants, Hughes Ranch, Inc., Michael B. Hughes and Sandra S. Hughes, executed and delivered to the plaintiff the following security instruments:

(a) Financing statement filed on August 26, 1980, in the office of the County Clerk of Garfield County, Nebraska.

Continuation Statements were filed in the same office on March 8, 1990, and April 9, 1985.

(b) Security Agreements dated September 26, 1980, July 16, 1981, and August 31, 1982.

(PCO ¶ 13.)

14. The security instruments set forth in paragraph 13 hereof granted a security interest to the plaintiff in certain chattel property described in those instruments, together with all increases, replacements, substitutions, additions, and accessions thereto. (PCO ¶ 14.)

15. The defendants, Hughes Ranch, Inc., Michael B. Hughes, Sandra S. Hughes, Melvin C. Hughes and Joyce M. Hughes, have failed to pay plaintiff all installments of principal and interest when due and have failed to pay applicable real estate taxes, in violation of the provisions of the notes, mortgages, and security agreements and are now, and are alleged by plaintiff to be, in default. (PCO ¶ 15.)

16. Other than the cases consolidated herein, no separate action at law or in equity has been brought by the plaintiff for the recovery of the indebtedness secured by the financing statement and security agreement. (PCO ¶ 16.)

17. The last payment made by the debtors was on December 19, 1979. (Filing 76, Affidavit of Doy Unzicker ¶ 19 & attached Ex. 60.)[3] On September 24, 1986, the government sent a certified letter to Hughes Ranch, Inc., declaring that all the notes were in default due to nonpayment and failure to pay real estate taxes. (Filing 66, Aff. of Keith I. Frederick ¶ 4h & attached letter dated September 24, 1986.)[4] At that time, the government stated that the *"entire indebtedness ... is now declared immediately due and payable"* and it demanded that "[p]ayment should be made by cashier's check, certified check, or postal money order

---

3. There was a $500 credit to the account on April 7, 1986, but the government "concede[s] that the payment was not made by the Defendants but was credited to the Statement of Account as part of the proceeds of a third party foreclosure." Gov't Reply Br. at 7 (October 9, 1998).

4. Government's counsel admits that "the first Notice of Acceleration was actually sent in 1986

... to Hughes, Ranch, Inc ." (Gov't Reply Br. at 4 (October 9, 1998).) Notices of acceleration were not given to the individual Hughes defendants until many years later. (Filing 76, Aff. of Doy Unzicker ¶ 17, 4:94CV3098.) However, the entire debt had been accelerated in 1986 and demand for payment was made then as well.

payable to the Farmers Home Administration." (*Id.*) (Emphasis added.) For purposes of the Hughes defendants' summary judgment motion, I assume, as they argue, that the FmHA attempted to conceal the fact that the entire debt was accelerated in 1986.

18. On January 15, 1991, Hughes Ranch, Inc., by Michael B. Hughes, as president, signed a document entitled "Farm and Ranch Plan." (Filing 76, Affidavit of Steven A. Russell ¶ 3; attached Ex. 59 pages 5 & 13; attached Depo. Michael B. Hughes, Tr. 83: 18–84: 18; 19: 1–18) The plan has been referred to as Exhibit 59, and contains 15 pages. (Filing 76, attached Ex. 59.) The following words appear on the bottom of the first page: "Revision II." (*Id.* at 1.) In Exhibit 59 there is "balance sheet" that starts on page one and ends on page five. (*Id.* 1–5.) Among other things, Exhibit 59 lists "long term liabilities" on the balance sheet. (*Id.* at 4.) The following liabilities to FmHA, representing the previously described notes, were listed on page four:

| Creditor | Due Date | Int. Rate | Amount Delinquent | Amount |
|----------|----------|-----------|-------------------|--------|
| FmHA 43–02 | 2018 | 0.081 | 0 | 335,434 |
| FmHA 43–03 | 2020 | 0.110 | 0 | 109,886 |
| FmHA 29–04 | 2010 | 0.110 | 0 | 101,771 |

(*Id.*)

Although the liabilities were listed on page four at the time he signed the document, when a copy of the plan was given to Michael B. Hughes some days later, he realized that someone had added the following to page four of the form: (a) in the space for "Total long term assets," the figure "208,000" was inserted; and (b) in the space for "total farm assets," the figure "237,950" was inserted. (Filing 76, attached Depo. Michael B. Hughes, Tr. 82: 3–83: 13.) In addition to a part of page four that he recognized, Hughes also testified that when he received copy of Exhibit 59 he recognized having seen only pages 1, 2, 3, 5, & 13 at the time he signed the paper. (*Id.* Tr. 79: 15–81:1.) Thus, Hughes testified that out of 15 pages, he saw only five pages, plus a part of another one, when he signed the document and that thereafter the document was materially altered by the government.[5]

19. The name of the "applicant/borrower" listed on the front page of Exhibit 59 is Hughes Ranch, Inc. (Filing 76, Affidavit of Steven A. Russell, attached Ex. 59 at 1.) No mention of the individual Hughes defendants is made on the first page of the document.

In addition to the corporate signature of "Hughes Ranch Inc. by Michael B. Hughes Pres," Michael B. Hughes and Sandra S. Hughes also signed Exhibit 59 on page five. (*Id.* at 5.) Their signatures appear below the signature for the corporation. (*Id.*) Immediately below the individual signature of Michael B. Hughes are the words: "Signature of Applicant/Borrower/Entity Member." (*Id.*) There are no words under the signature of Sandra S. Hughes. (*Id.*) Above the three signatures, on page five, are the following words: "Hughes Ranch, Inc., as stockholders & as individuals." (*Id.*) Immediately above those words, these additional words appear:

> The above information is furnished for the purpose of securing and maintaining credit and is certified to be complete and correct. The undersigned authorizes the FmHA to make all inquiries deemed necessary to verify the accuracy of the information contained above to determine my creditworthiness and to answer questions about their credit experience with me. I agree to notify FmHA promptly to any material changes to the above. I recognize that making any false statement on this Farm and Home Plan or any other loan docu-

---

5. The government offered the deposition testimony of Michael B. Hughes and Sandra S. Hughes. The government has not disputed their testimony regarding the events surrounding the execution of Exhibit 59.

ment may constitute a violation of criminal law. (*Id.*)

20. Exhibit 59 was also signed on page 13. (*Id.* at 13.) There is a signature for "Hughes Ranch Inc." but there is no indication who made the signature for the corporation. (*Id.*) After the signature for Hughes Ranch, Inc., and under the words "Signature of Applicant/Borrower," Michael B. Hughes signed the document. (*Id.*) Sandra S. Hughes also signed the document following the signature of her husband but no words appear under her signature. (*Id.*) These signatures were dated January 15, 1991. In addition, Glen G. Gatz appears to have signed the document and under his signature the words "Signature of County Supervisor" are printed. (*Id.*) His signature was dated January 24, 1991. (*Id.*) Above these four signatures, the following words appear:

I agree to follow this plan and to discuss with the County Supervisor any important changes that may become necessary. This instrument is a prospective plan only and does not release the security interest of the government in any security referred to in this plan. I RECOGNIZE THAT MAKING ANY FALSE STATEMENT ON THIS FARM AND HOME PLAN OR ANY OTHER LOAN DOCUMENT MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

(*Id.*)

21. The "Farm and Ranch Plan," Exhibit 59, was prepared by the government in an attempt to restructure the delinquent loans. (Filing 76, attached Depo. Michael B. Hughes Tr. 86: 4–25; 87: 1–5.) However, Exhibit 59 does not specify that any money is to be paid on the notes due the government. (Filing 76, attached Ex. 59 at 1–15.) In handwriting on page 12 the words "Supposible (sic) Cash avaible (sic)" and "17,358" appear. (*Id.* at 12.) This figure appears after a handwritten calculation where "36,517" has been subtracted from "53,875." (*Id.*) The sum of "36,517" also appears in type written print on page 13 of the document and purports to represent the "Amount Due" to "Garfield County" and "Melvin & Joyce." (*Id.* at 13.) The figure "53,875" also appears in type written print on page 12 of the document and it purports to represent "Total Available" from a "Sum-

mary of Year's Business." (*Id.* at 12.) The handwriting on Exhibit 59 was placed there by Sandra S. Hughes after they had received a completed copy of the document from the government. (Filing 76, attached Depo. Sandra S. Hughes Tr. 45: 6–10.) She testified that "we were questioning where [the printed numbers for the calculation] came from. We didn't know we had cash like that." (*Id.* Tr. 45: 7–10.) She agreed with Michael B. Hughes that "part of [Exhibit 59] I've never seen [before receiving a completed copy from the government]" and "I know that there's some figures in here that I have no idea where they came from." (*Id.* Tr. 44: 6–12.) She agreed with Michael B. Hughes that page four contained "additional figures that [she did] not recall [seeing at that time she signed the document]." (*Id.* Tr. 44: 13–22.)

22. As noted earlier, sometime after he signed the plan on January 15, 1991, the government provided Michael B. Hughes with a completed copy. (Filing 76, attached Depo. Michael B. Hughes, Tr. 85: 1–5.) The copy "contained pages that [he] had not seen before," and consequently he "refused the offer to restructure the debt." (*Id.* at Tr. 85: 10–14.) On February 25, 1991, the government did in fact offer a restructure plan to these defendants. (Filing 76, Affidavit of Doy Unzicker ¶ 13) The restructure plan proposed to "write-off" $810,598.56 and restructure $555,168.66. (*Id.*) As Hughes had stated during his deposition, the plan was not accepted by the debtors. (*Id.* ¶¶ 12–14 and attached Exs. 24–26 (unexecuted forms for acceptance of offer of restructure)).

23. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of Tax Sale Certificate No. 18 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

The North Half of the Northwest Quarter of Section 5, Township 22 North, Range 14 West of the 6th P.M. (a/k/a Parcel Number 42010)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 17.)

24. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of Tax Sale Certificate No. 17 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

The North Half and the North Half of the Southeast Quarter of Section 6, Township 22 North, Range 14 West of the 6th P.M. in Garfield County, Nebraska. (a/k/a Parcel Number 42016)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 18.)

25. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of Tax Sale Certificate No. 16 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

The Southwest Quarter of Section 6, Township 22 North, Range 14 West of the 6th P.M. in Garfield County, Nebraska. (a/k/a Parcel Number 42018)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 19.)

26. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of the Tax Sale Certificate No. 15 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

All of Section 31, Township 23 North, Range 14 West of the 6th P.M. in Garfield County, Nebraska. (a/k/a Parcel Number 43074)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 20.)

27. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of Tax Sale Certificate No. 14 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

The Northeast Quarter of the Southwest Quarter and the North Half of the South-east Quarter and the Southeast Quarter of the Southeast Quarter and the North Half of Section 1, Township 22 North, Range 15 West of the 6th P.M. in Garfield County, Nebraska. (a/k/a Parcel Number 52000)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 21.)

28. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of Tax Sale Certificate No. 13 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

The South Half of the Southwest Quarter and the Southwest Quarter of the Southeast Quarter of Section 1, Township 22 North, Range 15 West of the 6th P.M. in Garfield County, Nebraska. (a/k/a Parcel Number 52004)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 22.)

29. The defendant, counterclaimant and cross-claimant, Clare Coulthard, is the owner and holder of Tax Sale Certificate No. 12 issued by the Garfield County Treasurer to Garfield County on August 2, 1991, said Certificate being issued for all of the delinquent regular taxes on the following described property:

The Northeast Quarter of the Northeast Quarter and the West Half of the East Half and the East Half of the West Half and the Southeast Quarter of Section 12, Township 22 North, Range 15 West of the 6th P.M. in Garfield County, Nebraska. (a/k/a Parcel Number 52068)

for the tax years 1986, 1987, 1988, 1989 and the first half of 1990. (PCO ¶ 23.)

30. Clare Coulthard is the holder and owner of the several Certificates of Tax Sale of several parcels of real estate as set forth above by reason of the fact that on August 2, 1991, for good and valuable consideration, the Garfield County Treasurer assigned to Clare Coulthard said Tax Sale Certificates. (PCO ¶ 24; filing 83 ¶ 2.)

31. Thereafter, on March 12, 1992, pursuant to Nebraska Revised Statutes § 77–1818 (Michie 1995), Clare Coulthard paid the sub-

sequent taxes which accrued and became delinquent for the second half of 1990 on the above-described parcels of property. (PCO ¶ 25; filing 83 ¶ 4.)

32. Thereafter, on August 26, 1992, pursuant to Nebraska Revised Statutes § 77–1818 (Michie 1995), Clare Coulthard paid the subsequent taxes which accrued and became delinquent for all of 1991 taxes on the above-described parcels of property. (PCO ¶ 26; filing 83 ¶ 5.)

33. For purposes of enforcement of the mortgages, security agreements, and tax sale certificates, the following amounts are due the government and Coulthard:

A. There is due and owing the government on the various promissory notes executed by the Hughes defendants a balance of $690,702.86 principal, plus $1,102,633.08 interest, as of May 1, 1998, plus interest accruing from that date at a daily rate of $168.3041. (Filing 76, Affidavit of Doy Unzicker ¶ 19.)

B. There is due and owing Coulthard on the various tax sale certificates the sum of $41,805.39, which includes principal and interest, as of May 1, 1998, together with such additional interest thereafter as allowed by law. (Filing 83, Affidavit of Linda S. Koger, Treasurer for Garfield County, Nebraska ¶¶ 1–8.)

## II. ANALYSIS

As noted earlier, there are three motions for summary judgment. I take each motion in turn.

### A. Hughes Defendants' Motion

The Hughes defendants move for summary judgment because they believe the statute of limitations ran before the government filed suit. I address that motion first.

#### 1. Time Between Accrual and Suit

■ On September 24, 1986, as a result of nonpayment of the notes and the failure to pay real estate taxes on the pledged property, the government accelerated the indebtedness and made a demand for payment. At that time the government stated that the *"entire indebtedness . . . is now declared immediately due and payable"* and it demanded

that "[p]ayment should be made by cashier's check, certified check, or postal money order payable to the Farmers Home Administration." (Filing 66, attached letter dated September 24, 1986.) (Emphasis added.) The government's cause of action accrued on the date of this demand.[6] *See, e.g., United States v. Vanornum,* 912 F.2d 1023, 1025–27 (8th Cir.1990) (cause of action for nonpayment of note and guaranty accrued upon written demand for payment). The government filed suit on March 23, 1994. Accordingly, seven and one-half years passed between the accrual of the government's cause of action, (the date the entire debt became due), and the time when the government filed suit to collect the money.

#### 2. Applicable Statute of Limitations

■ In order to determine the proper statute or statutes of limitations, it must be understood that the government seeks two forms of relief, to wit: (1) a money judgment against the debtors; and (2) enforcement (foreclosure) of the real estate mortgages and security interests. We must also keep in mind that when the government lends money, as with the FmHA program at issue, federal law, not state law, determines the applicable statute of limitations. *See, e.g., Farmers Home Admin. v. Muirhead,* 42 F.3d 964, 965–66 & n. 3 (5th Cir.1995), *cert. denied* 516 U.S. 806, 116 S.Ct. 50, 133 L.Ed.2d 16 (1995) (federal statute of limitations, not state law, governed FmHA action based upon loans to farmers) (citing *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)). With this in mind, we can now turn more directly to the statute of limitations question.

■ The statute of limitations pertaining to suits for money lent by the government on promissory notes is found at 28 U.S.C. § 2415(a). *See, e.g., Vanornum,* 912 F.2d at 1025 (section 2415(a) applied to suit on SBA note and guaranty). In pertinent part, the statute provides that "every action for money damages brought by the United States . . . which is founded upon any contract express

---

**6.** Since the government accelerated the *"entire indebtedness"* in the 1986 letter to Hughes Ranch, Inc., the statute began to run on that date even though other acceleration notices were given to the individual defendants at later dates.

or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a).

 There is no statute of limitations pertaining to the foreclosure of mortgages [7] when, as here, the government acts as a sovereign.[8] *Muirhead,* 42 F.3d at 966 (stating that "every federal appellate court that has addressed whether there is a time bar on federal agencies' pursuit of real property foreclosure actions has agreed with the FmHA's position and has concluded that no such bar exists.") Therefore, the federal government is *never* time barred from foreclosing mortgages because of a statute of limitations. *Id.* at 966–67.[9] *Accord United States v. Thornburg,* 82 F.3d 886, 892–94 (9th Cir.1996) (SBA guaranteed mortgage).

### 3. Foreclosure

 With these principles in mind, we may begin to apply the applicable limitation periods to the government's claims. As to the mortgage and security interest foreclosure action, there is no statutory limitations period. Therefore, the Hughes defendants' motion for summary judgment will be denied as to that aspect of the government's suit. *See, e.g., Muirhead,* 42 F.3d at 965–68 (while government was time barred from recovery on notes pursuant 28 U.S.C. § 2415(a), the government was not prohibited from foreclosing the deed of trust even though it would have been time barred if Mississippi law applied.). *See also Magnolia Federal Bank for Savings v. United States,* 42 F.3d 968, 971–72 (5th Cir.1995) (six year federal statute of limitations for the United States to bring suit on notes barred government's right to enforce SBA notes that matured 11

and 19 years before suit, but that statute did not bar remedy on the SBA mortgages; thus, in the foreclosure action, the SBA liens would not be subordinated to mortgage lien filed in 1991 despite Mississippi law to the contrary.)

### 4. Money Judgment

Because more than six years elapsed between the accrual of the government's cause of action and the date suit was filed, section 2415(a) bars the government's suit for money unless some exception applies. Indeed, as to Melvin C. Hughes and Joyce M. Hughes, the government concedes that 28 U.S.C. § 2415(a) bars recovery of a money judgment against them. However, the government argues that the statute of limitations was extended as to Hughes Ranch, Inc., Michael B. Hughes, and Sandra S. Hughes when they alone signed the Farm and Ranch Plan, Exhibit 59.[10] For this argument, the government relies upon a portion of 28 U.S.C. § 2415(a) which states that the six year limitations period starts over in the event of a later "written acknowledgment of debt." 28 U.S.C. § 2415(a) (*"Provided,* that in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment.")

### (a) The Elements of a "Written Acknowledgment of Debt"

 To restart the statute of limitations by use of the "written acknowledgment of debt" proviso found in section 2415(a), the government must prove the facts necessary to trigger entitlement to the exception. *Federal Deposit Ins. Corp. v. Cardona,* 723 F.2d 132, 137 (1st Cir.1983) (applying section

---

**7.** 28 U.S.C. § 2415(c) states that "[n]othing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property."

**8.** The same would be true for "foreclosure" of security interests in personal property or fixtures.

**9.** Even if I were to apply Nebraska law, the defendants would not be helped because Nebraska has a ten year statute of limitations for the foreclosure of mortgages. Neb.Rev.Stat. § 25–202(1) (Michie 1995) (10 years from accrual). *See also PSB Credit Services, Inc. v. Rich,* 251 Neb. 474, 558 N.W.2d 295 (1997) (ten year stat-

ute of limitations for mortgage foreclosures, rather than five-year statute for trustee foreclosures, applied when the holder of a trust deed seeks court supervision of the foreclosure process). The government filed suit within 10 years of the date it accelerated the notes and made demand for payment.

**10.** The government does not argue that the *"Coleman"* litigation and associated injunction tolled the statute of limitations. *See Coleman v. Block,* 580 F.Supp. 192 (D.N.D.1983); *Coleman v. Block,* 580 F.Supp. 194 (D.N.D.1984); *Coleman v. Block,* 663 F.Supp. 1315 (D.N.D.1987) *judgment vacated by* 864 F.2d 604 (8th Cir.1988).

2415(a); stating that "[t]he question we must address is whether FDIC has proved that there was an effective acknowledgment of the Cardona debts.") The government has the burden of proof because it seeks the benefit of an exception to the general rule.

■ Under the statute, the government must prove that: (1) there is a writing; (2) the writing was signed, or may be deemed to have been adopted, by the debtor against whom the acknowledgment is asserted; (3) the writing unequivocally sets forth: (a) the debt due the government, and (b) an intent on the part of the debtor to pay that debt; and (4) the writing is communicated to the government.[11] *See, e.g., United States v. Rollinson,* 866 F.2d 1463, 1468 (D.C.Cir.), *cert. denied* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989) (agreement extending maturity date of a note was a sufficient written acknowledgment of debt under the statute; stating that "where a debtor unequivocally acknowledges and evidences a sufficient commitment to pay a preexisting debt, the law will treat the acknowledgment as a new promise to pay"); *United States v. Blusal Meats, Inc.,* 817 F.2d 1007, 1010 (2d Cir. 1987) (pleadings by principals of corporation, admitting that corporation had wrongfully received between $35,000 and $40,000 in violation of Food Stamp Act, was insufficient under section 2415(a); stating that it was the Congressional intent to codify the common law principle that the " 'obligation of a debt will continue where a debtor has acknowledged the debt and indicated his willingness to discharge the obligation' "; stating that "for a new payment obligation to accrue, an acknowledgment must clearly convey the debtor's recognition that it actually owed the creditor the claimed money") (*quoting* S.Rep. No. 1328, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Admin.News 2502, 2504 (legislative history of section 2415)); *United States v. Culver,* 958 F.2d 39, 41 (4th Cir.1991) (listing of the debt in a financial statement prepared by the debtor and given to the SBA during settlement negotiations was sufficient under section 2415(a) to constitute a written acknowledgment of debt); *Cardona,* 723 F.2d at 136–38 (listing of debt in estate tax return prepared by debtor was sufficient under section 2415(a)); *United States v. J.R. LaPointe & Sons, Inc.,* 950 F.Supp. 21, 23 (D.Me.1996) (borrower's application for settlement of FmHA debt constituted a "written acknowledgment of debt" under the statute); *United States v. Lorince,* 773 F.Supp. 1082, 1096–1102 (N.D.Ill.1991) (financial statements prepared and submitted for purposes of negotiating a settlement with SBA did not constitute "written acknowledgment" under section 2415(a); "An acknowledgment in writing is sufficient to renew the limitation period if it is unequivocal and reflects an intent on the part of the debtor ... to pay the debt"; holding that the financial statements given in course of unsuccessful settlement negotiations were neither an acknowledgment of liability nor a promise to pay the SBA). *See also* 51 Am.Jur.2d *Limitation of Actions* §§ 321–359 (1970) (Acknowledgment and New Promise).

### (b) Application of the Elements to the Undisputed Facts

Keeping in mind that the government has the burden of proof on whether Exhibit 59 triggered the "written acknowledgment of debt" exception to the statute, *Cardona,* 723 F.2d at 136, I decide that the exhibit is insufficient under section 2415(a) to restart the statute of limitations. I have two reasons for this conclusion.

■ First, Exhibit 59 is insufficient because the balance sheet prepared by the government was incomplete when it was signed and it was later materially altered by the government. The undisputed testimony of Michael B. Hughes and Sandra S. Hughes is that Exhibit 59 was prepared by the government and that the document, including the balance sheet, was not complete when they signed it. In fact, out of a total of 15

---

11. Both sides urge me to adopt a categorical approach. The government argues that the mere listing of a debt on any financial statement is always enough to restart the statute of limitations. On the other hand, the defendants argue that the listing of a debt on a financial statement, which is part of settlement negotiations, is never sufficient if settlement is not reached. I reject both categorical approaches, and instead apply an elements test because such a test is most consistent with the statute and the cases.

pages, the signatories saw only five complete pages, and part of another page. Moreover, while page *four of the document contained* part of a balance sheet listing the debts due the government, part of the asset side of that same balance sheet was later substantially altered by the government's addition of hundreds of thousands of dollars of assets. An incomplete balance sheet prepared and then materially altered by a creditor fails to either "clearly convey the debtor's recognition that it actually owed the creditor the claimed money" or to " 'indicate[ ] his willingness to discharge the obligation.' " *Blusal Meats, Inc.,* 817 F.2d at 1010 (citation omitted).

■■■ Second, the balance sheet in Exhibit 59 is insufficient as against the individual defendants because it is a balance sheet for "Hughes Ranch, Inc.," and not the balance sheet of Michael B. Hughes or Sandra S. Hughes.[12] Thus, Exhibit 59 tells us nothing about whether these individual defendants recognized that they owed the government or that they intended to pay the debt. Consequently, even if Exhibit 59 was binding upon Hughes Ranch, Inc., such an acknowledgment would not be binding upon Michael B. Hughes and Sandra S. Hughes because they neither personally acknowledged that they owed the money nor did they indicate a personal willingness to pay it.[13] *See, e.g., Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141, 143 (10th Cir.1985) (affirming district court's decision dismissing suit against guarantors even though corporate debtor, through an accountant, acknowledged debt on financial statement; stating that: "It is the general rule that an acknowledgment by a principal debtor will not affect the running of the statute of limitations as to a guarantor.... We believe that the federal courts will follow this rule.") (citation omitted); 51 Am.Jur.2d *Limitation of Actions* § 351, at 845–46 ("One of Several Obligors") (stating

that the "later cases" hold that a "new ... acknowledgment by one of several joint obligors, although sufficient to bind the promisor personally, will not toll the statute of limitations against his co-obligors") (footnotes and citations omitted) (collecting cases).

Moreover, and as evidenced by the government's concession that the statute expired against Melvin C. Hughes and Joyce M. Hughes as they did not sign Exhibit 59, there is no reason here to believe that one obligor had the authority under the loan documents to extend the statute of limitations for the other obligors. *Compare Rollinson,* 866 F.2d at 1471–72 (holding that one obligor had the power to extend the maturity date of the note, and thereby indirectly extend the running of the statute of limitations, because the underlying instruments vested in that one obligor the power to do so).

In summary, the motion for partial summary judgment of the Hughes defendants will be denied as to the foreclosure remedy sought by the government. On the other hand, the motion will be granted as to the government's claim for a money judgment since the limitation period under 28 U.S.C. § 2415(a) ran before suit was filed and the government has failed to prove entitlement to the statutory exception for a "written acknowledgment of debt."

### B. The Government's Motion

The government moves for summary judgment on its money judgment and foreclosure claims. I will deny the government's motion for summary judgment on its claim for a money judgment for the reasons expressed above. I will grant the government's motion for summary judgment on its foreclosure claim. As to the government's foreclosure claim, there is no statute of limitations, the government has undisputably proven all the

---

**12.** The words "Hughes Ranch, Inc." precede the words "Balance Sheet" on page 1 of the Farm and Ranch Plan. Neither Michael B. Hughes nor Sandra S. Hughes are mentioned until the signature pages, found at pages 5 and 13, recite their names.

**13.** That an individual debtor signed the form as a "stockholder" or as an "individual" or as an "entity member" or as a "borrower" is irrelevant because the listing of the debt is solely contained

within a corporate balance sheet that explicitly pertains only to Hughes Ranch, Inc. I might be able to infer an acknowledgment of Michael B. Hughes' debt to the FmHA if it was listed on *his* balance sheet (assuming the document was complete). However, I cannot logically infer anything about Michael B. Hughes' belief that he owed the money or was willing to pay it, from a balance sheet prepared to describe the assets and debts of Hughes Ranch, Inc., and that is true whether or not Michael B. Hughes signed the document.

necessary elements, and the "unclean hands" defense asserted by the Hughes defendants has no legal or factual merit.

### 1. The Applicable Law

For purposes of determining what the government must prove to enforce a mortgage or security interest executed as a part of a national lending program sponsored by the United States, the following three rules are used: (1) federal law applies; (2) federal law generally requires that the state law where the federal court is situated supplies the rule of decision; and (3) the state law rule of decision will not govern where a national rule is required to further the federal interest. *See, e.g., United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 718, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (holding that while federal law applies, since a national rule is unnecessary to protect the federal interest underlying SBA and FHA loan programs, the relative priority of private and consensual liens are to be determined under state law absent a congressional directive to the contrary); *Donovan v. Farmers Home Admin.,* 19 F.3d 1267, 1268–70 (8th Cir.1994) (applying state law to determine the status of government's lien); 28 U.S.C. § 2410(a) & (c) (granting jurisdiction to federal and state courts in actions affecting property in which United States has a lien; stating that a "judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated.") The government asserts no federal interest in this case that would preclude reference to state law. Therefore, I will look to Nebraska law to decide whether the government has proven a right to enforce the mortgages and security interests. I do so next.

### 2. The Necessary Elements

When foreclosing a mortgage, Nebraska law, which becomes the rule of decision here, requires the government to prove "the existence of the mortgage lien, the amount and priority thereof, default, and the right to a decree directing sale of the premises and satisfaction thereof." *West Town Homeowners Assoc. v. Schneider,* 231 Neb. 100, 103, 435 N.W.2d 645, 648 (1989). *See also* Neb.Rev.Stat. §§ 25–2137, et seq. (Michie 1995) (foreclosure of mortgages). Similar proof is required for the enforcement of security interests. *See, e.g., Mid–America Dairymen, Inc. v. Newman Grove Co-op. Creamery Co., Inc.,* 191 Neb. 74, 78, 214 N.W.2d 18, 22 (1974). *See also* Neb. U.C.C. § 9–203 (Michie 1998 Supp.) (attachment and enforceability of security interest); Neb.Rev. Stat. §§ 25–1093, et seq. (Michie 1995) (replevin).

I find and conclude that the government is entitled to enforce the mortgages and security interests unless the "unclean hands" defense has sufficient merit to withstand the government's summary judgment motion. In particular, the following are undisputed: (1) promissory notes were signed by the Hughes defendants in consideration for money lent by the government; (2) in consideration for the loans evidenced by the promissory notes, the Hughes defendants granted the government mortgages and security interests as alleged by the government; (3) except for taxes and related tax sale certificates, the mortgages and security interests have priority over the claims of all others; (4) the notes are in default because of nonpayment of the debt and real estate taxes; and (5) the government is entitled to a decree of foreclosure on the mortgages and an order of replevin on the security interests unless the defense of "unclean" hands is meritorious.

### 3. Defense of "Unclean Hands"

I turn next to the "unclean hands" defense asserted by the Hughes defendants. The defendants assert, and I agree, that a mortgage foreclosure or replevin action is an equitable action subject to equitable principles in federal court. *See, e.g., In Re Cassidy Land & Cattle Co., Inc.,* 69 B.R. 649, 651 (D.Neb.1987) (on appeal from a bankruptcy judge's decision, Chief Judge Beam stated: "A mortgage foreclosure action is by nature an equitable proceeding, subject to the general equity jurisdiction of the federal courts, following equitable principles and rules of practice established by courts of equity in the exercise of their general jurisdiction") *aff'd*

836 F.2d 1130 (8th Cir.), *cert. denied sub nom. McCarty Ranch Trust v. Craig,* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988).[14]

■ The defendants next assert, and I also agree, that the government is normally not entitled to equitable relief if the government has acted inequitably or in bad faith relative to the matter in which the government seeks equitable relief. *See, e.g., EEOC v. Recruit USA, Inc.,* 939 F.2d 746, 752–55 (9th Cir.1991) (" 'Clean hands' doctrine ... insists that one who seeks equity must come to the court without blemish"; it is a " 'self-imposed ordinance that closes the doors of a court of equity to one tainted with an inequitableness or bad faith relative to the matter in which he seeks relief' "; while the "clean hands" doctrine applies to the government, "the 'clean hands' doctrine should not be strictly enforced [against the government] when to do so would frustrate a substantial public interest"; where EEOC sought injunction against defendants suspected of discrimination, refusing to apply the doctrine even though EEOC allegedly violated Title VII's confidentiality provisions) (citations omitted).

The defendants finally assert that the plaintiff has "unclean hands" because the government, in an attempt to avoid the statute of limitations, tried to hide the fact that the debt was accelerated in 1986. Additionally, the defendants assert that the loans were negligently administered and the government has "unclean hands" as a consequence. For two reasons, I find and conclude that the "unclean hands" defense has no legal or factual merit in this case.

■ First, before the "unclean hands" doctrine can apply, the government's improper conduct must be related " 'to the matter in which [it] seeks relief.' " *Recruit USA., Inc.,* 939 F.2d at 752 (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). Even if the government tried to hide the date of acceleration from the defendants or the court,[15] that impropriety dealt only with the government's attempt to avoid the statute of limitations on its claim for a personal money judgment against the debtors. In other words, the date of acceleration was material only to the claim for money. Because there is no statute of limitations for foreclosure actions brought by the government, the date of acceleration (as opposed to the fact of acceleration) was not material to the government's prayer for foreclosure. Consequently, the government's conduct in trying to hide the 1986 acceleration date (if that be true) does not relate to the foreclosure action, and it is the foreclosure action which is " 'the matter in which [the government] seeks relief.' " *Id.*

Accordingly, the "unclean hands" doctrine as it pertains to the attempt to hide the date of acceleration does not apply to the government's claim for enforcement of the mortgages and security interests. In short, the government's improper behavior was insufficiently related to the equitable relief it now seeks.

■ Second, assuming the government was in fact negligent in administration of the loans, the "unclean hands" defense does not apply. The "unclean hands" doctrine is predicated upon " 'inequitableness or bad faith.' " *Id.* Neither predicate exists here.

While negligent conduct might amount to "inequitableness" in some cases, it does not here. At most, the defendants' have shown that the government dallied, kept poor records, and gave the defendants incorrect and confusing information. The defendants' have adduced no facts showing that they reasonably relied upon the government's incompetence as to render foreclosure inequitable.

14. Although the defendants rely upon federal law for their defense, Nebraska law also utilizes the "clean hands" doctrine in equity cases like this one. *See, e.g., Matthews v. Guenther,* 120 Neb. 742, 235 N.W. 98 (1931) (discussing "clean hands" doctrine in mortgage foreclosure case; holding that doctrine did not apply where, although the note and mortgage interest rate violated usury statute, foreclosure was justified because of nonpayment of taxes).

15. While I assume for purposes of the summary judgment motion that FmHA tried to hide the 1986 acceleration letter, there is not the slightest evidence that the Assistant United States Attorney handling this case was a party to that behavior.

Nor have the defendants presented any facts showing that their interest in the pledged property has been harmed because of the government's negligence. On the contrary, because the government was tardy, the defendants are relieved of the obligation to personally pay over a million dollars. Even if the government was negligent in the way it administered these loans, there is nothing inequitable about enforcing the mortgages and security interests in this situation.

As for "bad faith," even if the loans were administered negligently, there are no facts showing that the loans were administered in a "bad faith" manner material to enforcement of the mortgages or security interests. As a matter of fact, the defendants' evidence reveals that the government consistently, albeit ineptly, tried to avoid enforcing the mortgages and security interests so that the defendants could continue farming. The loan restructuring efforts and the related appeal hearings are firm evidence of the government's lack of "bad faith."

In summary, the statute of limitations has run against the government's claim for a money judgment against the debtors. No statute of limitation pertains to the government's efforts to enforce the mortgages and security interests. On the undisputed facts, the government is entitled to enforcement of the mortgages and security interests. Lastly, the defense of "unclean hands" is not supported by the law or the facts. Accordingly, summary judgment will be granted for the government on its claim for enforcement of the mortgages and security interests, and the government's motion for summary judgment will otherwise be denied.

### C. Coulthard's Motion

Coulthard, in a well written submission, argues that he is entitled to foreclosure of the tax sale certificates. In other words, he wants the real estate sold to pay the principal, interest and court costs related to the tax sale certificates he holds. Despite opposition by the Hughes defendants, I will grant his motion.

Under Nebraska law, if a taxpayer fails to pay his or her real estate taxes those taxes, with interest and costs, become a first lien against the real estate. Neb.Rev.Stat. § 77–203 (Michie 1995). Moreover, an unrelated private individual like Coulthard may "purchase" the overdue taxes and upon such payment receive a tax sale certificate from the political subdivision. Neb.Rev.Stat. § 77–1812 (Michie 1995). Such a tax sale certificate permits the individual to foreclose the first lien for taxes. Neb.Rev.Stat. § 77–1902 (Michie 1998 Supp.) There is no factual dispute that Coulthard properly purchased the alleged tax sale certificates after the real estate taxes became delinquent. With these basics in mind, I now turn to Coulthard's claims against the government and the other defendants.

■ First, Coulthard's claim, founded as it is upon real estate taxes initially owed to a subdivision of local government, takes priority over the government's mortgages if Nebraska law supplies the rule of decision. Neb.Rev.Stat. § 77–203 ("All general real property taxes ... shall be a first lien on the real estate taxed until paid or extinguished as provided by law.") Since I have previously found that Nebraska law supplies the rule of decision in this case, the government does not contest Coulthard's motion, and the government does not claim that a federal interest requires a contrary national rule, I decide that Coulthard's tax certificate claim has priority over the government's mortgage claim.

Second, it is equally clear that the undisputed facts prove that Coulthard has a right to foreclosure of the tax sale certificates under Neb.Rev.Stat. § 77–1902 unless there is a viable defense. While implicitly conceding that Coulthard is otherwise entitled to foreclosure, the Hughes defendants argue that: (1) Nebraska law will not permit him to foreclose the tax sale certificates in federal court; (2) Coulthard filed his action prematurely. I reject both arguments as legally invalid.

■ It is true that Neb.Rev.Stat. § 77–1902 states that the "holder of such tax sale certificate ... may proceed in the district court of the county in which the land is situated to foreclose the lien for taxes represented by the tax sale certificate ... and all subsequent tax liens thereon...." It is not true, however, that this court lacks the statutory authority to consider Coulthard's claim or that Coulthard can only assert his claim in a particular state district court.

To start with, the quoted language from the Nebraska statute cannot fairly be read to preclude a defendant like Coulthard, who has been sued in federal court, from asserting his state law rights when every other party to the litigation is required or permitted to assert their state law rights. More importantly, even though state law may supply the rule of decision, this court has subject matter jurisdiction over the real estate ("res") pursuant to federal law. *See* 28 U.S.C. § 2410(a) & (c) (action affecting property in which the United States has lien). Nebraska law holds that where one court first obtains jurisdiction over a "res," no other court can acquire jurisdiction over the property. *Olsen v. Olsen,* 254 Neb. 293, 298, 575 N.W.2d 874, 878 (1998) (" 'It is a well settled rule that where one court of competent jurisdiction in a proceeding in rem obtains jurisdiction of the res, or in other words, the thing in controversy, *no other court can acquire jurisdiction over it.*' ") (Citation omitted.) Consequently, under the Nebraska law that supplies the rule of decision in this case, the Hughes defendants cannot require Coulthard to invoke the jurisdiction of another court. This court was the first to lawfully obtain jurisdiction over the real estate, and no other court, including the state district court, would have jurisdiction. Nebraska precedent therefore negates the Nebraska statutory language relied upon by the Hughes defendants.

■ The Hughes defendants next argue that Coulthard submitted his foreclosure claim too soon. It is true that Coulthard's claim could be "brought only within six months after the expiration of three years from the date of sale of any real estate for taxes ..." Neb.Rev.Stat. § 77–1902. It is also true that if Coulthard did not do so, his "tax sales certificates shall cease to be valid...." Neb.Rev.Stat. § 77–1856 (Michie 1995). Further, it is true that Coulthard first asserted his claim as required by our pleading rules in an answer, counterclaim and crossclaim filed on June 29, 1994. (Filing 10.) Lastly, it is true that Coulthard's claim was filed prematurely because three years from August 2, 1991, the date of sale of the certificates, had not yet expired when Coulthard first filed his claim on June 29, 1994.

It is not true, however, that Coulthard's claim is barred by the Nebraska statute. Even if filed too soon, Coulthard's claim was pending, and unresolved, "within six months after the expiration of three years from the date of sale of any real estate taxes" as required by the statute. There is no claim that the Hughes defendants' were prejudiced by Coulthard's premature filing. Therefore, the pendency of the premature claim during the state statutory window for filing claims cured any deficiency caused by Coulthard's early filing.

■ A contrary interpretation of the Nebraska statute would require Coulthard, on pain of forfeiting more than $41,805.39, to uselessly refile a claim that was in all respects identical to the one he first filed only a month earlier. No one, including the Hughes defendants, would justly benefit from such a money wasting procedure. Absurd interpretations of statutes, causing unjust and unconscionable results, are to be avoided under Nebraska law. *See, e.g., State v. Beerbohm,* 229 Neb. 439, 445, 427 N.W.2d 75, 79 (1988) ("It is a well-established rule that in construing a statute, this court will, if possible, try to avoid a construction which leads to absurd, unjust, or unconscionable results.") (Citations omitted.)

In summary, Coulthard's has proven he has the right to foreclose the tax sale certificates. Likewise, Coulthard's claim takes priority over the government's mortgages insofar as the real estate is concerned.

### III. CONCLUSION

The Hughes defendants have no personal liability to the government. The government is entitled to foreclosure and enforcement of the mortgages and security interests. Coulthard is entitled to foreclosure of the tax sale certificates, and that claim has priority over the government's mortgages.

IT IS ORDERED that:

1. The motion for summary judgment (filing 65 (4:94CV3098); filing 58 (4:94CV3099)) filed by Hughes Ranch, Inc., and others, is granted in part and denied in put as follows:

 A. The Hughes defendants have no personal liability to the government on the promissory notes.

B. The motion is otherwise denied.

2. The motion for summary judgment filed by the United States of America (filing 74 (4:94CV3098); filing 63 (4:94CV3099)) is granted in part and denied in part as follows:

A. The motion is denied to the extent that it seeks the entry of a money judgment against the Hughes defendants.

B. The motion is granted to the extent that it seeks the entry of a judgment for foreclosure of mortgages and enforcement of security interests.

3. The motion for summary judgment filed by Coulthard (filing 82 (4:94CV3098)) is granted to the extent that it seeks entry of a judgment for foreclosure of the tax sale certificates and that claim shall take priority over the government's mortgages.

4. The Clerk shall withhold judgment until further order of the court.

5. After consulting with opposing counsel and securing their approval as to form, counsel for the government shall, within 30 days, submit to me a judgment (including decree of foreclosure and order of enforcement, such as replevin) in accordance with this opinion.