**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**v.**

**GULF & WESTERN INDUSTRIES, INC., Charles G. Bluhdorn, Don F. Gaston, Defendants.**

Civ. A. No. 79–3201.

United States District Court, District of Columbia.

Nov. 24, 1980.

A. Fred Freedman, Steven Rosenberg, Washington, D.C., for plaintiff.

Arthur L. Liman, New York City, for defendant Gulf & Western.

Edward Bennett Williams, Washington, D.C., for defendant Bluhdorn.

Peter E. Fleming, Jr., New York City, for defendant Gaston.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

In this proceeding, the Securities and Exchange Commission (SEC or Commission) seeks permanent injunctive relief enjoining Gulf & Western, Inc. (Gulf & Western), its chief executive officer, Charles Bluhdorn, and Don F. Gaston, an executive vice-president from engaging in allegedly fraudulent practices in violation of the federal securities laws. The Commission charges the defendants with violations of the anti-fraud, anti-manipulation and reporting requirements of the securities laws.[1] The Commission's 60-page complaint alleges a wide range of violations and charges the defendants with improper financial reporting, false and misleading disclosures and failure to disclose material information concerning the corporation's business operations, financial condition and management activities in filings with the Commission and in documents disseminated to shareholders.

In response to the complaint, the defendants assert six affirmative defenses which in summary charge the Commission with certain improprieties during the Gulf & Western investigation, a number of equitable defenses and prior acquiescence in the company's accounting methods which are challenged in the complaint. In the first defense, the defendants assert the complaint should be dismissed because of the Commission's alleged improprieties which include: (1) violation of the attorney-client privilege; (2) leaks by the SEC staff to the press during the investigation; (3) misuse of market regulation powers; and (4) interference with defendants' access to witnesses. In three of the defenses, the defendants reallege the facts underlying these

---

1. The defendants are charged with violations of the following statutory provisions: § 17(a) of the Securities Act of 1933, §§ 10(b), 13(a), 13(d) and 14(a) of the Securities Act of 1934 and various rules, including Rule 10b-5, promulgated thereunder.

claimed abuses and apply various legal principles including: balance of equities, deterrence of future abuses by the SEC, and unclean hands. The fifth defense asserts that the Commission is estopped from challenging accounting principles it previously had approved and the sixth defense charges the Commission with laches and equitable estoppel. The Commission responds that these various defenses are insufficient as a matter of law and have filed a motion to strike. Fed.R.Civ.P. 12(f). Oral arguments on the defendants' motion were considered by the Court on November 10, 1980.

■ Motions to strike are not generally favored. 2A Moore Federal Practice ¶ 12.-22[1] (2d ed. 1979). If an affirmative defense is sufficient as a matter of law or if it presents substantial questions of fact or law, the motion should be denied. *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 (7th Cir. 1975). The prevailing rule was noted in *Systems Corp. v. American Telephone & Telegraph Co.*, 60 F.R.D. 692, 694 (S.D.N.Y.1973):

> Motions to strike defenses are not favored and will be denied "if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Before this type of motion can be granted "the Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." (citations omitted).

However, in *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962), the court refused to strike a portion of the pleading and made the following analysis:

> A disputed question of fact cannot be decided on motion to strike. It is true, also, that when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of

the allegations for determination on the merits. (citations omitted)

■ The motion should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense. *SEC v. Weil*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,541 (M.D.Fla. Feb. 7, 1980); *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F.Supp. 798, 801 (D.R.I. 1976). Additionally, defenses which would tend to significantly complicate the litigation are particularly vulnerable to a motion to strike. *Louisiana Sulphur Carriers Inc. v. Gulf Resources & Chemical Corp.*, 53 F.R.D. 458, 460 (D.Del.1971).

With these standards in mind, the Court has considered the legal memoranda of counsel and their oral argument and concludes that the Commission's motion should be denied as to the allegations of the first defense based on the breach of the attorney–client privilege and matters which defendants claim are directly related thereto. Pending further discovery, that defense may be asserted. The Commission's motion to strike the remaining defenses is granted.

**A.**

*First Affirmative Defense*

As noted, the defendants' first affirmative defense is a four prong reference to certain alleged improprieties committed by the Commission during its investigation of the possible securities law infractions by Gulf & Western. Because the investigation was based on the fruits of these alleged violations, the defendants assert that the Commission's complaint should be dismissed. The defendants' oral argument focused on the claimed breach of the attorney–client privilege and the Court is primarily concerned with that claim.

Joel Dolkart, the former general counsel to Gulf & Western was indicted for grand larceny and other criminal law violations in 1974. Later he assisted the Commission during its investigation into the company's

alleged securities law violations. The defendants claim the information was obtained from Dolkart in violation of the attorney–client privilege since he had counseled and advised Gulf & Western on many of the matters being investigated. Additionally, during the investigation the New York Times ran a series of articles on the charges against the defendants. The defendants claim the SEC staff leaked the information obtained from Dolkart to the press and that this caused injury to the reputation and credit of defendants and violated the Commission's own rules regarding private investigations. Furthermore, defendants claim these two abuses are of constitutional dimensions because the breach of the attorney–client privilege violated their legitimate expectation of privacy and the leaks to the press constituted a summary punishment without the due process guarantees of the Fifth Amendment.[2]

In *Wellman v. Dickinson*, 79 F.R.D. 341 (S.D.N.Y.1978), the trial court was faced with a similar situation when the defendants alleged the Commission had committed abuses of a general nature during the investigation. Judge Carter summarized his concerns at page 351 in the following language: [3]

> Defendants are in effect, asking this court to weigh the societal interest in curbing governmental abuses in the conduct of agency investigations against the societal interest in protecting the invest-

ing public, and conclude that the latter must yield to the former. I have serious, perhaps immutable, doubts as to Defendants' contentions with respect to which of these two competing concerns must triumph. . . . However, it is wiser to render a decision on this question in the context of a specific factual setting, rather than in the abstract and after the arguments for and against the competing rulings have been fully explored, rather than summarily addressed, by the parties. (citation omitted)

Defendants ask this Court to apply the same balancing test and dismiss the complaint because of the alleged violations by the SEC.

 The two alleged improprieties claimed by the Gulf & Western defendants involve substantial questions of law and fact. Three issues underly the alleged breach of the privilege: (1) was the privilege actually breached by Dolkart,[4] (2) is the exclusionary rule applicable to information derived from breaches of this privilege,[5] and (3) is the remedy for the alleged violation suppression of the evidence or dismissal of the action. The Court may find, as the Commission urges, that any information obtained from Dolkart in violation of the attorney–client privilege may be isolated and suppressed at trial. On the other hand, defendants may be correct in their view that all of the information obtained by

---

2. Transcript, Hearing on the Motion to Strike (November 10, 1980) at 34.

3. After a hearing on the merits, Judge Carter finally ruled "that the tentative conclusions announced [in the earlier opinion], to the effect that defendants' defenses lacked merit, are now firm and final." *Wellman v. Dickinson*, 475 F.Supp. 783, 836 (S.D.N.Y.1979).

4. In addition to serving as general counsel to Gulf & Western, Joel Dolkart also served as one of its officers and directors and as a trustee of the company's pension fund. Before an attorney–client privilege may be asserted, it must be shown that the advice was given in a professional legal relationship, *Westinghouse Elect. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1320 (7th Cir. 1978); and that the information involved was confidential, *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 862 (D.C.Cir.1980). The

privilege does not apply if the advice was given in the furtherance of a crime or fraud. *United States v. Mardian*, 546 F.2d 973, 982 (D.C.Cir. 1976). Additional information is required regarding the circumstances surrounding Dolkart's cooperation and relationship with the Commission before the matter can be resolved.

5. Courts have applied the exclusionary rule to civil proceedings, e. g. *Knoll Associates, Inc. v. F.T.C.*, 397 F.2d 530 (7th Cir. 1968) (use by government of stolen documents in FTC proceeding was equivalent of an "unreasonable search and seizure"). The Commission claims the exclusionary rule cannot be applied here because a breach of the attorney–client privilege is not a violation of the law and is not constitutionally protected. *OKC Corp. v. Williams*, 461 F.Supp. 540, 546 (N.D.Tex.1978).

the Commission relates in some fashion to the breach by Dolkart.[6] It is also not clear that the alleged leaks to the press are abuses which would offend the due process rights of the defendants. The Court must be able to ascertain whether the information was leaked by members of the Commission's staff, whether the leaks caused Gulf & Western "substantial and irreparable harm," and whether the leaks were a form of summary punishment which denied defendants due process of the laws.[7] Limited discovery should shed light on these matters.

■ As the Commission urges, affirmative defenses in SEC enforcement actions have not been well received in this District Court and motions to strike have been granted with little discussion of the underlying facts. *SEC v. Canadian Javelin Limited,* 451 F.Supp. 594 (D.D.C., 1978) (order striking affirmative defenses based on claims of failure to join indispensable parties, laches, statute of limitations, inequitable circumstances and unclean hands); *SEC v. Continental Advisers* [1978–79] Fed.Sec. L.Rep. (CCH) ¶ 96,489 (D.D.C. June 29, 1978) (court refused to "allow [the] action to stray into an inquiry regarding whether the SEC has a basis for proceeding with this action" and granted a motion to strike the defenses based on statute of limitations, laches and improper authorization of the suit); *SEC v. Diversified Industries, Inc.,* No. 76–2114 (D.D.C., June 23, 1977) (motion to strike affirmative defense based on laches and estoppel granted). As will be discussed below, this Court shares these views with respect to the laches and estoppel defenses. There is no indication, however, that the earlier cases dealt with defenses of a constitutional dimension which involved substantial questions of law or fact. The facts in this litigation appear to be distinguishable from these three cases which are relied on by the Commission.[8] The Court concludes that under the circumstances now presented, a more detailed factual record is needed before a final decision on the motion to strike is made and some discovery is warranted.

At the November 10th hearing, the defendants stated that a factual record could be developed on the first affirmative defense by taking the depositions of Joel Dolkart and a limited number of present and former members of the Commission's staff with whom he was in direct contact during the SEC investigation of Gulf & Western's alleged securities law violations. At that hearing, the parties differed slightly as to their recollection and identity of such persons. Since then they have made other submissions identifying the persons needed for discovery and the defendants have narrowed down the list of persons to be deposed. The Court will allow defendants to depose the individuals who are named in the accompanying order.

### B.

*Other Affirmative Defenses*

The second defense asserts that the balance of equities and the public interest

---

**6.** The Commission argued that Gulf & Western's alleged failure to disclose material elements in its Dominican Sugar transactions occurred in 1974 *after* Dolkart had been indicted and had resigned as general counsel; and thus all the information underlying the complaint could not be in violation of the attorney–client privilege. The defendants, however, claim that the Dominican matter had antecedents in other transactions with the Dominican Republic which Dolkart knew about and gave prior advice concerning the disclosures. Transcript, *supra* note 2, at 11, 43.

**7.** At this point, the affirmative defense based on leaks to the press appears to be of questionable merit. Because the defendants maintain that a factual record can be developed by de-posing the same persons needed for the attorney–client issue and that no delay will occur, limited discovery will be allowed on this issue.

**8.** This case is more analagous to *SEC v. National Student Marketing Corp.,* 68 F.R.D. 157, 163 (D.D.C.1975), *aff'd* 538 F.2d 404 (D.C.Cir. 1976), *cert. denied, White and Case v. SEC,* 429 U.S. 1073, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977), where the Court was faced with an affirmative defense which may have justified dismissal of the action. The motion to strike was granted only after a determination was made that the rule in question was a discretionary procedure and that the Commission's noncompliance with such did not justify dismissal.

weigh against an injunction in favor of the Commission. The defendants ask the Court to deny the injunction to deter similar future violations by the SEC in their third defense. Finally, the fourth defense claims that the Commission is barred from injunctive relief on the grounds that it came into court with unclean hands.

Although couched in different terminology, the considerations involved in an analysis of these three defenses are identical to those underlying the first defense. The defenses are redundant and add little to the defendants' pleading. Furthermore, the doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest. *United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir. 1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). *SEC v. Bull Investment Group, Inc.* [1974–75] Fed.Sec.L.Rep. ¶ 95,010 (D.Mass. March 10, 1975). To allow these three defenses to stand would only complicate the case and waste valuable litigating time.

The fifth defense, based on a different set of facts, asserts that the "SEC approved, ratified, or participated in the promulgation of the accounting principles whose application is challenged in certain allegations in the complaint." Answer ¶ 246. The defendants argue that the accounting treatment of the Commonwealth United Corporation and the Franklin New York Corporation transactions had previously been employed by other issuers within the jurisdiction of the SEC and that the Commission acquiesced in such treatment. Complaint ¶¶ 44–71, 82–87. The Commission responds that it had no basis on which to ascertain which methods were used by the companies at the time the financial statements were submitted.

The government is not ordinarily estopped by its past conduct from protecting the public interest. *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *Udall v.*

*Oelshlaeger*, 389 F.2d 974 (D.C.Cir.) cert. denied, 392 U.S. 909, 88 S.Ct. 2056, 20 L.Ed.2d 1367 (1968). More specifically, it has been held that estoppel may not be raised against the Commission in enforcement actions. *SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959); *SEC v. Diversified Industries, Inc., supra*. Section 26 of the Securities Exchange Act of 1934, 15 U.S.C. § 78z, makes the point clearly:

> [N]o action or failure to act by the Commission ... shall be construed to mean that the particular authority has in any way passed upon the merits of or given approval to any security or any transaction or transactions therein ....

*Accord: Capital Funds, Inc. v. SEC*, 348 F.2d 582, 588 (8th Cir. 1965).

Equitable estoppel has been applied against the government in order to prevent an "egregious injustice". *L'Enfant Plaza Proprieties, Inc. v. D. C. Redevelopment Land Agency*, 564 F.2d 515, 524 (D.C.Cir. 1977). If the Commission proves its case, the defendants will be enjoined from using these methods in the future. No "egregious injustice" would result from such a holding and the exception to the general rule cannot be applied. Consequently, the defendants' fifth defense, even if proven to be true, would be an insufficient defense as a matter of law.

The defendants' sixth and final affirmative defense realleges the violations of law by the Commission and claims that the Commission is barred from injunctive relief on grounds of laches and equitable estoppel. As shown in the foregoing discussion, an estoppel defense is without merit. A claim of laches also cannot be applied to a government agency working in the public interest. *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *SEC v. Diversified Industries, Inc., supra; SEC v. Continental Advisers, supra*. Here, the length of the investigation is a reflection of the complexity of the fact pattern and does not support a laches defense. The authority relied on by the defendants is inapposite to the question of

whether laches applies to the facts of this case. The sixth defense, therefore, is also insufficient as a matter of law.