**UNITED STATES of America,
Plaintiff,**

v.

**PHILIP MORRIS INCORPORATED,
et al., Defendants.**

**No. CIV.A. 99–2496(GK).**

United States District Court,
District of Columbia.

Jan. 23, 2004.

---

Sharon Y. Eubanks, Stephen D. Brody, Frank J. Marine, Andrew N. Goldfarb, U.S. Department of Justice, Washington, DC, for Plaintiff.

Alfred McDonnell, Arnold & Porter, Denver, CO, Amy L. McGinnis, Amy Elizabeth Ralph, Anne McBride Walker, Floyd E. Boone, Jr., James Miller Rosenthal, Jeanna Maria Beck, Jonathan Louis Stern, Kendall Millard, Kevin M. Green, Leslie Wharton, Melissa L. Marglous, Michael R Geske, Murray R. Garnick, Nick Malhotra, Peter Thomas Grossi, Jr., Ryan David Guilds, Sharma Jnatel Simmons, Sharon L. Taylor, Stacy J. Pollock, Susan Louise Lyndrup, Brian K. Esser, Arnold & Port-er, Washington, DC, Ashley Cummings, Hunton & Williams, Atlanta, GA; Ben M. Germana, Herbert M. Wachtell, Jeffrey M. Wintner, Steven M. Barna, Wachtell, Lipton, Rosen & Katz, New York City, Bradley E. Lerman, Dan K. Webb, Elizabeth D. Jensen, Jeffrey Wagner, Kevin J. Narko, Lauren J. Bernstein, Luke A. Palese, Ricardo E. Ugarte, Thomas J. Frederick, Winston & Strawn, Chicago, IL, C. Ian Anderson, Davis, Polk & Wardwell, New York City, Cindy L. Gantnier, Cynthia S. Cecil, Erik D. Nadolink, Patricia M. Schwarzschild, Richard H. Burton, Hunton & Williams, Richmond, VA, Daniel C. Jordan, Hunton & Williams, McLean, VA, Duane J. Mauney, Arnold & Porter, Washington, DC, James Lewis Brochin, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Robert M. Rader, Thomas M. Stimson, Timothy M. Broas, Winston & Strawn LLP, Washington, DC, Seth Barrett Tillman, U.S. District Court for the Middle District of Alabama, Montgomery, AL, David B. Alden, Paul Crist, Randal S. Baringer, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, Elizabeth P. Kessler, Ivan C. Smith, Scott C. Walker, Jones, Day, Reavis & Pogue, Columbus, OH, Geoffrey T. Wright, Jonathan Redgrave, Patrick L. Hubbard, Paul Sommer Ryerson, Peter John Biersteker, Robert Francis McDermott, Jr., Karen O'Brien Hourigan, Jones Day, Washington, DC, Harold K. Gordon, Jones, Day, Reavis & Pogue, New York City, John Buchanan Williams, William M. Bailey, Collier Shannon Scott, PLLC, Washington, DC, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston–Salem, NC, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA., Minneapolis, MN, Andrew Martin McCormack, William Charles Hendricks, III, King & Spalding, Washington, DC, Dan H. Willoughby, Leign Ann Dowden, King & Spalding, At-

lanta, GA, David M. Bernick, Deirdre A. Fox, Douglas G. Smith, Michelle H. Browdy, Stephen R. Patton, Steven D. McCormick, Kirkland & Ellis, Chicago, IL, David Mendelson, Dawn D. Marchant, Jason Beckerman, Karen McCartan DeSantis, Kirkland & Ellis LLP, Washington, DC, David Patrick Sullivan, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, Paul Lamont McDonald, Philadelphia, PA, Rebecca I. Ruby, Goodwin Procter, LLP, Washington, DC, Bruce D. Ryder, J. William Newbold, James M. Cox, Michael B. Minton, Richard Paul Cassetta, Thompson Coburn LLP, St. Louis, MO, Edward Craig Schmidt, Matthew David Schwartz, Thompson Coburn, LLP, Washington, DC, Paige Q. Szajnuk, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, Aaron H. Marks, Daniel R. Benson, Julie R. Fischer, Leonard A. Feiwus, Marc E. Kasowitz, Nancy E. Straub, Kasowitz, Benson, Torres Friedman, L.L.P., New York City, Fred W. Reinke, Kenneth Anthony Gallo, Clifford Chance US, LLP, Washington, DC, Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, Michael P.A. Cohen, Washington Lawyers' Committee, Washington, DC, Warren Neil Eggleston, Howrey Simon Arnold & White, LLP Washington, DC, Demetra Frawley, Mary Elizabeth McGarry, Michael V. Corrigan, Simpson Thatcher & Barlett, New York City, Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Washington, DC, Arnon D. Siegel, Lawrence Saul, Roy T. Englert, Jr., Robbins Robbins, Russell, Englert, Orseck & Untereiner, David L. Wallace, F. John Nyhan, Garyowen P. Morrisroe, Jessica L.

Zellner, Washington, DC, Bruce G. Sheffler, Lawrence Edward Savell, Chadbourne & Parke LLP, New York City, Timothy M. Hughes, Chadbourne & Parke, New York City, William Salvatore D'Amico, Chadbourne & Parke, Washington, DC, Bruce G. Merritt, David Runtz, Judah Best, Kevin C. Lombardi, Debevoise & Plimpton, Steven Klugman, Washington, DC, Dennis H. Hranitzky, Joseph P. Moodhe, Steven S. Michaels, Debevoise & Plimpton, New York City, Clausen Jr. Ely, James Alexander Goold, John Vanderstar, Joseph A. Kresse, Keith Allen Teel, Covington & Burling, Washington, DC, Jason T. Jacoby, Hunton & Williams, Richmond, VA, for Defendants.

## *MEMORANDUM OPINION*

KESSLER, District Judge.

This matter is now before the Court on the United States' Motion for Partial Summary Judgment on Defendants'[1] Equitable Defenses of Waiver, Equitable Estoppel, Laches, Unclean Hands, and *In Pari Delicto* ("Motion"). The Government argues that each of these affirmative defenses is insufficient as a matter of law and must be dismissed.[2]

The essence of the Government's argument is that the equitable defenses of waiver, equitable estoppel, laches, unclean hands and *in pari delicto* may not be asserted against the United States when, as here, "it is acting in its sovereign capacity to exercise public rights to protect the public interest." Motion at 1–2. Defen-

---

**1.** Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Invest-

ments), Ltd., The Council for Tobacco Research–U.S.A., Inc., The Tobacco Institute, Inc. and The Liggett Group, Inc.

**2.** *See* Gov't Motion Attachment A (chart identifying the particular affirmative defenses challenged by the Motion).

dants argue to the contrary that equitable defenses are routinely available against the Government and are supported by the evidence in this case.

The case law overwhelmingly supports the Government's position. The United States brings its RICO claims in its capacity as sovereign, acting on behalf of the public to vindicate public rights. The Supreme Court has stated that any waiver of such sovereign authority must be unmistakable, *United States v. Cherokee Nation of Oklahoma*, 480 U.S. 700, 707, 107 S.Ct. 1487, 94 L.Ed.2d 704 (1987) (internal citation omitted), yet the Defendants have not pointed to anything in the record that constitutes an unmistakable waiver of the Government's right to pursue these claims. The case law is also clear that if equitable estoppel is ever to apply to the Government, the justification for it must be compelling and must go beyond the showing a party would have to make against an ordinary opponent in an ordinary case. *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C.Cir.1988). In this case, the Defendants have not even satisfied the traditional elements of equitable estoppel. It is equally clear that, under the law of this Circuit, laches and unclean hands are both unavailable as a matter of law when, as here, the Government acts in the public interest. *Illinois Central Railroad Co. v. Rogers*, 253 F.2d 349, 353 (D.C.Cir.1958) (laches); *United States ex rel. Purcell v. MWI Corp.*, 254 F.Supp.2d 69, 74 n. 2 (D.D.C.2003) (laches); *SEC v. Sprecher*, No. 92–2860, 1993 WL 544306, *2 (D.D.C. 1993) (citing *Pan American Petroleum & Transport Co. v. United States*, 273 U.S.

456, 506, 47 S.Ct. 416, 71 L.Ed. 734 (1927)) (unclean hands); *SEC v. Gulf & Western Ind., Inc.*, 502 F.Supp. 343, 348 (D.D.C. 1980) (unclean hands). Finally, *in pari delicto* is only available when a party has "violated the law in cooperation with the defendant," *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Since Defendants have not even alleged that the Government has committed any illegality during the period covered by the Complaint's allegations of conspiracy, the defense of *in pari delicto* has no applicability.

Upon consideration of the Motion, the Opposition, the Reply and the entire record herein, and for the reasons set forth below, the United States' Motion is **granted.**

## I. BACKGROUND

### A. Factual Allegations

Plaintiff, the United States of America ("the Government") has brought this suit against Defendants pursuant to Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*[3] Defendants are manufacturers of cigarettes and other tobacco-related entities. The Government seeks injunctive relief and $289 billion[4] for what it alleges to be an unlawful conspiracy to deceive the American public.

The Government's Amended Complaint describes a four-decade long conspiracy, dating from at least 1953, to intentionally and willfully deceive and mislead the American public. According to the Gov-

---

**3.** The Complaint originally contained four claims under three statutes. On September 28, 2000, the Court dismissed Count One (pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651, *et seq.*) and Count Two (pursuant to the Medicare Secondary Payer provisions of the Social Security Act, 42

U.S.C. §§ 1395y(b)(2)(B)(ii) & (iii)). *See United States v. Philip Morris*, 116 F.Supp.2d 131 (D.D.C.2000).

**4.** *See* United States' Preliminary Proposed Findings of Fact at 14.

ernment, the underlying strategy Defendants adopted was to deny that smoking caused disease and to consistently maintain that whether smoking caused disease was an "open question." Am. Compl. at ¶ 34. In furtherance of that strategy, Defendants allegedly issued deceptive press releases, published false and misleading articles, destroyed and concealed documents which indicated that there was in fact a correlation between smoking and disease, and aggressively targeted children as potential new smokers. Am. Compl. at ¶ 36.

The Government also alleges that over the course of the conspiracy, Defendants made false and misleading statements concerning the addictiveness of nicotine. Defendants continually denied that nicotine is addictive, even in the face of what the Government calls overwhelming evidence to the contrary. Am. Compl. at ¶¶ 71–72. Defendants allegedly took actions to make cigarettes even more addictive by manipulating and increasing the potency of nicotine in their cigarettes. Am. Compl. at ¶ 77. Nevertheless, Defendants have repeatedly denied that they manipulated the level of nicotine in their products. Am. Compl. at ¶ 79.

The Government also alleges that Defendants used deceptive marketing to exploit smokers' desire for less hazardous products and "misled consumers by marketing products that consumers believe are less harmful, even though they are not." Am. Compl. at ¶ 83. For example, according to the Government, Defendants have marketed "light" or "low tar/low nicotine" cigarettes as being less hazardous to smokers even though there is no basis for believing they are any safer than other cigarettes. Am. Compl. at ¶ 86.

### B. Affirmative Defenses

Defendants have asserted a variety of affirmative defenses to these allegations in their Answers, responses to interrogatories, and in Joint Defendants' Preliminary Proposed Conclusions of Law Regarding Affirmative Defenses ("J.D.PPCL"). These defenses include waiver, equitable estoppel, laches, unclean hands and *in pari delicto*.

The thrust of Defendants' equitable defenses is that the Government itself has been involved with, permitted, encouraged, and even mandated the very conduct it now challenges in this RICO action. For example, while the Government claims that the Defendants deceived its agencies and employees about the relationship between smoking and disease, Defendants respond that the Government itself has known of that relationship for decades. Mem. in Opp'n at 1. Regarding allegations of Defendants' concealment of the addictive nature of nicotine, they claim that "the Government seeks to obscure the fact that . . . it officially maintained that nicotine was not 'addictive' until the Surgeon General changed the definition of addiction in 1988." *Id.* According to Defendants, despite the fact that the Federal Trade Commission ("FTC") required Defendants to use the so-called FTC Method for reporting tar and nicotine, the Government now alleges that their compliance with this requirement is fraudulent. J.D. PPCL 816.

Similarly, regarding the allegation that they affirmatively suppressed research into safer cigarettes, Defendants claim that "the Government disregards that, for over ten years, it worked closely with [D]efendants in pursuit of such a cigarette, and that it was responsible for disbanding the joint effort." Mem. in Opp'n at 1. Although the Government now attacks Defendants' development and marketing of low tar cigarettes, "it was the Government that *actively encouraged* and publicly lauded the development of those cigarettes." *Id.* (emphasis in original).

In short, Defendants contend in their affirmative defenses that "the Government's involvement with, acquiescence in, and encouragement of the challenged conduct forecloses equitable relief." Mem. in Opp'n at 5.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).[5]

## III. ANALYSIS

The Court will assume for purposes of this Motion that the facts relied upon by Defendants are true and undisputed.[6]

## A. As a Matter of Law Defendants Have Not Established Waiver of the Government's Right to Bring a RICO Suit

██ Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Weathers*, 186 F.3d 948, 955 (D.C.Cir.1999) (citations and quotation omitted). Defendants assert that the Government's past conduct "is replete with instances of behavior demonstrating that the Government has knowingly abandoned its right or interests in equitable relief as to defendants' historical conduct." Mem. in Opp'n at 19 (citing Defendants' Rule 7.1/56.1 Counter Statement ("Defendants' Statement") at ¶¶ 1–107). They argue that the Government has waived its interest because its "silence and delay" over the years are inconsistent with the right to pursue its RICO claims. Mem. in Opp'n at 20.

For example, according to Defendants, the Government was "obliged to speak out to the extent it considered defendants' conduct unlawful" in light of its long-standing knowledge of the adverse health consequences of tobacco use, and its extensive regulation of cigarettes. Mem. in Opp'n at 19–20. As other asserted examples of intentional waiver, Defendants note: the Government worked with Defendants in the Tobacco Working Group to develop a "safer" cigarette; the FTC has required

---

5. Defendants claim that this Court has already "rejected *identical* legal arguments regarding the Government's asserted immunity to equitable defenses." Mem. in Opp'n at 6 (emphasis in original) (citing Order # 227). Defendants' reliance on Order # 277 is misplaced. In that Order the Court granted in part and denied in part the Government's Motion to Strike Certain Affirmative Defenses.

The defenses at issue in the instant Motion were among those that Order # 277 declined to strike because they "raise[d] questions of fact or law, or both" which were "not properly disposed of on a motion to strike." Sep. 11, 2002 Mem. Op. at 7. It is perfectly clear from the Memorandum Opinion accompanying Order # 277 that it did not preclude the Government from seeking summary judgment as to any of these same defenses after the close of discovery and after the claims in the case had become more focused.

6. Of course, the Court is well aware that there is much dispute concerning these facts.

Defendants to "report tar and nicotine levels for 'light' cigarettes using the FTC Method"; the Government has long been aware that the FTC Method "does not accurately measure the tar and nicotine actually ingested by smokers"; and the Government itself "encouraged smokers to switch to low-tar cigarettes on the ground that they were safer." J.D. PPCL 816. *See also* Mem. in Opp'n at 19–20.

■ The Supreme Court has clearly stated that "a waiver of sovereign authority will not be implied, but instead must be surrendered in unmistakable terms." *United States v. Cherokee Nation of Oklahoma,* 480 U.S. 700, 707, 107 S.Ct. 1487, 94 L.Ed.2d 704 (1987) (internal citation omitted). *See also Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 148, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (same). The Attorney General is expressly authorized to bring civil RICO suits pursuant to 18 U.S.C. § 1964(b) and there is no question that the Government brings its RICO claims in its sovereign capacity. Therefore, any waiver must be made in unmistakable terms.

Defendants argue that the intent to waive "may be inferred from circumstances," including silence "under such circumstances when ... one would naturally speak." Mem. in Opp'n at 18–19 (citations omitted). However, Defendants ignore the heightened standard that applies when the waiver of sovereign power is in question. Indeed, in *United States v. Winstar,*

518 U.S. 839, 877, 116 S.Ct. 2432, 135 L.Ed.2d 964, upon which Defendants rely, the Supreme Court explained that it had "refused to infer a waiver of federal sovereign power from silence" in *Cherokee Nation of Oklahoma, supra.*[7]

The other facts cited by Defendants to establish waiver simply do not demonstrate an "unmistakable" intent on the part of the United States to waive its right to bring a civil RICO action, predicated on mail and wire fraud against Defendants.[8] None of the facts set forth by Defendants mentions RICO or has any connection to the Attorney General's statutory right to enforce that statute, or any other statute. The paragraphs from Defendants' Statement cited in support of their waiver defense likewise fail to show the Government's *unmistakable* intent to waive its right to bring a RICO action, or any other action, against Defendants. *See* Mem. in Opp'n at 19 (citing Defendants' Statement at ¶¶ 1–107.)

The Court therefore finds that, viewing the evidence in the light most favorable to the Defendants, they have, as a matter of law, failed to offer evidence sufficient to justify a finding of the Government's unmistakable intent to waive its right to bring a civil RICO suit against them. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

7. The question of whether the United States has waived a sovereign power has typically arisen in the context of contracts as it did in *Merrion,* or cases involving treaties, such as *Cherokee Nation.* Defendants attempt to distinguish *Merrion* and *Cherokee Nation* on the basis that their waiver argument "has nothing to do with the silence of a commercial contract (or treaty)." Mem. in Opp'n at 11–12 n. 4. Defendants cite to no caselaw in support of the proposition that the so-called "unmistakability doctrine," *United States v. Winstar,* 518

U.S. at 871, 116 S.Ct. 2432, is confined to the context of contracts and treaties. Nor do they explain why a waiver of sovereign power outside that context could be based on less than unmistakable terms.

8. As noted previously, the Court assumes, for the purposes of this Motion, that the facts relied upon by Defendants are true and undisputed.

party, there is no genuine issue for trial") (internal citation omitted). Therefore, the affirmative defense of waiver is insufficient as a matter of law.[9] The Government's motion for summary judgment as to affirmative defenses based on waiver is granted.

### B. As a Matter of Law, Defendants Have Not Established that the Government Is Estopped from Bringing a RICO Suit

■ The doctrine of equitable estoppel "is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct." *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1111 (D.C.Cir.1988) (citations omitted). As described more fully below, the Defendants argue that because the Government encouraged and even mandated some of the conduct which is the subject of the RICO allegations in this case, it is now estopped from claiming that this same conduct violates RICO.

The Supreme Court has not decided the question of whether the doctrine of equitable estoppel can ever apply against the government. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 423, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("[w]e leave for another day whether an estoppel claim could ever succeed against the Government" although the arguments in favor of a flat rule against it "are substantial"); *Heckler v. Community Health Services of*

*Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("[w]e have left the issue open in the past and do so again today."). This Circuit has held that "the fundamental principle of equitable estoppel applies to government agencies, as well as private parties." *ATC Petroleum,* 860 F.2d at 1111 (internal quotation and citations omitted). However, neither the Supreme Court nor this Circuit has ever upheld a finding of equitable estoppel against the Government. *See Office of Personnel v. Richmond,* 496 U.S. at 422, 110 S.Ct. 2465 ("we have reversed every finding of estoppel that we have reviewed").

■ It is clear, however, that even if equitable estoppel does apply to the Government, any such application "must be rigid and sparing" and that the case for estoppel "must be compelling." *Id.* The rationale for this heightened burden is that "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler,* 467 U.S. at 60, 104 S.Ct. 2218. The party wishing to assert estoppel against the government must not only demonstrate "each of the traditional elements of the doctrine," but must also make "a showing of an injustice ... and lack of undue damage to the public interest." *ATC Petroleum,* 860 F.2d at 1111 (internal quotation and citations omitted).[10]

---

9. The Government argues that the United States cannot, as a matter of law, waive its sovereign capacity to vindicate the public interest. Gov't Mem. in Supp. at 5–6 (citing *United States v. California,* 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947)). Because the Court finds that Defendants' waiver defense is legally insufficient, it need not reach this issue.

10. The Government argues that the Defendants are required to show, in addition to the traditional elements, some kind of affirmative misconduct by the Government that "consist[s], at [a] minimum of active misrepresentation or concealment." *Id.* Mem. in Supp. at 14 (citing cases).

While the Supreme Court has sometimes suggested that only affirmative misconduct would justify application of equitable estoppel

■ The traditional elements of equitable estoppel are, therefore, a threshold requirement that Defendants must meet in order to assert the doctrine in this case. These elements are: (1) false representation, (2) a purpose to invite action by the party to whom the representation was made, (3) ignorance of the true facts by that party and (4) reliance. *Id.*

■ Here, viewing the facts in the light most favorable to Defendants, they have failed to establish, as a matter of law, the false representation element of equitable estoppel. In an effort to establish this factor, Defendants rely on the Government's regulation of their industry, arguing that "the Government's participation in, and regulation of, the cigarette industry can be characterized as a misrepresentation of the claims now advanced." Mem. in Opp'n at 29. (internal quotation omitted). For example, they argue that the Government encouraged the development and marketing of reduced tar products, and that this encouragement constituted a representation that such conduct would not later subject Defendants to prosecution. *Id.* at 29–30.

■ Assertion of equitable estoppel requires a "definite misrepresentation." *Heckler*, 467 U.S. at 59, 104 S.Ct. 2218 (quoting with approval Restatement (Second) of Torts § 894(1)(1979)); *Grumman Ohio Corp.*, 776 F.2d at 347–48 (equitable estoppel against government agency rejected where "there appears to have been no actual misrepresentation or concealment" and "no definitive statement was

made"); *Hertzberg v. Veneman*, 273 F.Supp.2d 67, 83 (D.D.C.2003) (doctrine of estoppel requires showing that "there was a 'definite' representation to the party claiming estoppel"). None of the facts recited in Defendants' Memorandum in Opposition or Statement constitute representations, much less misrepresentations or definitive statements, concerning whether Defendants would ever be subject to RICO prosecution.[11] The Court does not agree that regulation of an industry constitutes a definite representation regarding potential liability under RICO. Certainly, Defendants cite no authority for the proposition that lawful government regulation can be deemed a "misrepresentation" for the purpose of establishing the elements of equitable estoppel.

"[H]owever heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Heckler*, 467 U.S. at 60, 104 S.Ct. 2218. The Court finds that government regulation and related facts cited in Defendants' Statement do not make a "compelling" case for the assertion of equitable estoppel. In the absence of any representations or definitive statements by the Government concerning pursuit of Defendants under RICO, or any other statute, the application of equitable estoppel would not be "rigid and sparing" as required by this Circuit. Because the Defendants have failed to present evidence that could constitute a misrepresentation

to the government, this Circuit has left the question open. *Grumman Ohio Corp. v. Dole*, 776 F.2d 338, 347 n. 8 (D.C.Cir.1985).

11. Defendants point to the following facts, assumed to be true for the purpose of this Motion: the Government encouraged the marketing of reduced tar products; the Government "advised the public that such prod-

ucts were safer than their counterparts", and the FTC required the use of the FTC method for reporting and advertising tar and nicotine yields. Mem. in Opp'n at 29 citing (Statement at ¶¶ 87–94, ¶ 76). None of these facts amount to representations that Defendants would not later be subject to suit under RICO, or any other statute.

by the Government, the Government's motion for summary judgment as to affirmative defenses based on equitable estoppel is **granted**. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### C. Laches Is Unavailable as a Matter of Law

▇▇▇ The doctrine of laches bars relief to parties who "delay the assertion of their claims for an unreasonable time." *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C.Cir. 1985). "Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights." *Id.* The doctrine serves several purposes. It encourages plaintiffs to file suits before their claims are stale and evidence is lost, and prevents plaintiffs from gaining the unfair advantage of hindsight *Id.*

▇▇▇ Here, Defendants assert laches as an affirmative defense to the Government's allegations. They argue that the Government's claims have, in whole or in part, "grown stale beyond revival." Mem. in Opp'n at 23.[12] For example, Defendants point out that several witnesses are deceased or otherwise unavailable and that numerous documents have been destroyed or become otherwise irretrievable. *Id.* The Government's delay is unreasonable, according to Defendants, because the Gov-

ernment has for decades been fully aware of their activities and of the health effects of smoking but "never made any claim of criminal misconduct." *Id.* at 24 n. 12. Moreover, the amount of profits that the Government seeks to disgorge is "largely attributable to the timing of the [G]overnment's decision to prosecute." *Id.* "In sum ... the timing of the Government's prosecution is both unreasonable and prejudicial." *Id.* at 24.

▇▇▇ It is correct that the United States is subject to laches in certain restricted contexts, such as commercial suits. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 369, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (United States is not exempt from laches in commercial context because it "does business on business terms").[13] However, "[a]s a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917). The inapplicability of laches when the Government sues to enforce the public interest is sometimes called the "*Summerlin* rule." *See United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) (it is "well settled that the United States is not ... subject to the defense of laches in enforcing its rights"). The Supreme Court has noted that the "continuing vitality" of this rule rests on "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Guaranty Trust Co. of New York v. United States*,

---

**12.** The parties agree that the RICO statute does not contain a statute of limitations. Mem. in Supp. at 19; Mem. in Opp'n at 21.

**13.** Defendants are therefore correct that laches may be applicable "regardless of the character of the plaintiff." Mem. in Opp'n at 12

(citing *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 893–94 (7th Cir.1990)). However, it does not follow that laches is applicable to the Government regardless of the character of the claim at issue.

304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) (quoting Story, J., in *United States v. Hoar*, 26 F Cas. 329, 330, (C.C.D.Mass.1821) (No. 15373)).[14] *See Illinois Central Railroad Co. v. Rogers*, 253 F.2d 349, 353 (D.C.Cir.1958) ("[n]o rule is better established than that the United States are not bound by limitations or barred by laches where they are asserting a public right.") (internal quotation omitted).

Defendants rely on *Resolution Trust Corp. v. Vanderweele*, 833 F.Supp. 1383, 1388 (N.D.Ind.1993), for the proposition that "'no ... precedent forecloses a laches defense as a matter of law when the Government asserts rights on behalf of the public at large.'" Mem. in Opp'n at 12 (quoting *Vanderweele*, 833 F.Supp. at 1388).[15] In that case, the court acknowledged that the Supreme Court has held that laches could not be asserted against the Government. 833 F.Supp. at 1388. However, *Vanderweele* observes that the Seventh Circuit has relied on dicta in more recent Supreme Court cases, such as *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), to find laches "applicable to suits by government agencies" on a "case by case" basis. *Id.* (citing *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 894 (7th Cir. 1990)).

Defendants' reliance on *Vanderweele* and *P\*I\*E Nationwide* is misplaced for two compelling reasons.

First, this is not the Seventh Circuit. *Summerlin*, which has not been overruled by the Supreme Court, remains the law of this Circuit. *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp.2d 69, 74 n. 2 (D.D.C.2003) (Urbina, J.) (citing *Mount Vernon Mortgage Corp. v. United States*, 236 F.2d 724, 725 (D.C.Cir.1956)). While noting that the Seventh Circuit in *P\*I\*E Nationwide* had concluded that laches could be applied to government agencies based on Supreme Court dictum, *MWI* rejected such an application because "[t]his circuit has adopted the *Summerlin* rule." *Id.* at 75.

Other cases within this circuit which post-date *Occidental Life* have similarly applied the *Summerlin* rule. *See e.g., SEC v. Sprecher,* No. 92–2860, 1993 WL 544306, \*2 (D.D.C.1993) ("the government is not subject to the defense of laches when acting in a nonproprietary capacity.")(citing *Summerlin*); *SEC v. Gulf & Western Industries, Inc.*, 502 F.Supp. 343, 348 (D.D.C.1980) ("[a] claim of laches ... cannot be applied to a government agency working in the public interest.") (citing *Summerlin*). Here, there is no question that the Government has brought a RICO suit on behalf of the public and is not acting in a proprietary capacity or on behalf of individuals. *See United States v. International Brotherhood of Teamsters*, 3 F.3d 634, 638 (2d Cir.1993) (when it proceeds under 18 U.S.C. § 1964, "the government sues in its sovereign capacity pursuant to a compelling governmental in-

---

**14.** *See also United States v. California*, 332 U.S. 19, 40, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947) ("The Government, which holds its interests ... in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of government property cannot by their conduct cause the Govern-

ment to lose its valuable rights by their acquiescence, laches, or failure to act.")

**15.** *Vanderweele* actually states that "no *Seventh Circuit* precedent foreclose[s] a laches defense" when the Government acts in the public interest. 833 F.Supp. at 1388 (emphasis added). As discussed below, the defense is foreclosed by precedent in this Circuit.

terest and strong congressional policy") (citations omitted).[16]

Second, both *Vanderweele* and *P\*I\*E Nationwide* rely upon *Occidental Life*, an enforcement action undertaken by the EEOC on behalf of an individual claimant, not on behalf of the public. Moreover, the Seventh Circuit has recognized in a case decided after *P\*I\*E Nationwide*, that cases in which the Government asserts the rights of individual claimants are an "exception" to what remains the "general rule" that "the United States is not subject to the equitable defense of laches in enforcing its rights." *Martin v. Consultants and Administrators Inc.*, 966 F.2d 1078 (7th Cir.1992) (citing *Summerlin*).[17] *Vanderweele* itself acknowledged that the Seventh Circuit "has not allowed a laches defense in suits on behalf of the public interest," 833 F.Supp. 1383, although such a defense is apparently not foreclosed in that circuit.

Finally, the dicta in *Occidental* upon which *P\*I\*E\* Nationwide* and *Vanderweele* rely is hardly compelling. Justice Stewart noted that

> when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of [sic] a particular case, the trial court may restrict or even deny backpay relief. The same discretionary power to locate a just result in light of the circumstances peculiar to the case, can also be exercised when the EEOC is the plaintiff.

432 U.S. at 373, 97 S.Ct. 2447. This is not language which can be read to overturn the long-standing *Summerlin* rule.

Therefore, the affirmative defense of laches is foreclosed by *Summerlin* and is insufficient as a matter of law. The Government's motion for summary judgment as to affirmative defenses based on laches is **granted**.[18]

### D. The Defenses of Unclean Hands and *In Pari Delicto* Are Unavailable as a Matter of Law

Defendants also assert the related defenses of unclean hands and *in pari delicto*. The unclean hands doctrine derives from the equitable maxim that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The doctrine "closes the

---

**16.** Other courts have disallowed the application of laches to RICO claims brought by the United States seeking equitable relief under RICO. *See U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F.Supp. 1114, 1152 (E.D.N.Y.1992); *United States v. International Bhd. of Teamsters*, 708 F.Supp. 1388, 1402 (S.D.N.Y.1989); *United States v. Bonanno Organized Crime Family*, 683 F.Supp. 1411, 1458 (E.D.N.Y.1988) (citing *Summerlin*).

**17.** The scope of the Seventh Circuit's exception to *Summerlin* is unclear. *See United States v. Administrative Enterprises, Inc.*, 46 F.3d 670, 672–673 (7th Cir.1995) (Posner, C.J.) (observing that the Seventh Circuit has "entertained the possibility of a defense of laches against the government" on a variety of grounds, including the possibilities that it is

only available in the "most egregious instances," or when the government seeks to enforce "what are in the nature of private rights" (including its own commercial interests), as opposed to sovereign rights). In *P\*I\*E Nationwide*, as in *Occidental Life*, the government sought to enforce the rights of an individual employee. 894 F.2d at 890.

**18.** The Government also notes that RICO's legislative history suggests that Congress intended the doctrine of laches not to apply to suits by the United States pursuant to that statute. Mem. in Supp. at 19 (citing S.Rep. No. 617, 91st Cong., 1st Sess., at 160 (1969)) (stating that "there is no general statute of limitations applicable to civil suits brought by the United States to enforce public policy, nor is the doctrine of laches applicable").

doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Id.*

■ *In pari delicto* "literally means 'in equal fault'" and is based on "the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Historically the doctrine has been "limited to situations where the plaintiff bore at least substantially equal responsibility for his injury, and where the parties' culpability arose out of the same illegal act." *Id.* (internal quotation omitted; citing 1 J. Story, Equity of Jurisprudence 399–400 (14th ed.1918)).[19]

The Defendants make it clear that they do *not* allege that any of the Government's conduct relied upon in support of these defenses was actually wrongful. Mem. in Opp'n at 24. Rather, they argue that the Government engaged in the same sort of conduct as Defendants themselves. *Id.*

According to Defendants, conduct that demonstrates the Government's unclean hands includes: Government scientists questioned whether smoking causes disease, Mem. in Opp'n at 25; the Government failed to communicate to the public its knowledge of the properties of nicotine until 1988, *id.* at 26; the Department of

Defense has subsidized cigarette sales to servicemen in "an attempt to profit at the expense of the health and welfare of military personnel," *id.* at 26; the Government has supported domestic tobacco farming, *id.* at 27; the Government encouraged smokers to switch to lower tar products, *id.* at 27–28; and the Government has discouraged and interfered with the creation of safer cigarettes, *id.* at 28.

■ When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law. *See SEC v. Gulf & Western Ind., Inc.*, 502 F.Supp. 343, 348 (D.D.C.1980) (in SEC enforcement action "the doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest."); *SEC v. Sprecher*, No. 92–2860, 1993 WL 544306, *2 (D.D.C.1993) ("an unclean hands defense does not lie in a civil enforcement action brought by a federal agency, as distinguished from a private plaintiff.") (citing *Pan American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 506, 47 S.Ct. 416, 71 L.Ed. 734 (1927)); *See also SEC v. Rivlin*, No. 99–1455, 1999 WL 1455758, *5 (D.D.C. 1999) (striking affirmative defense of unclean hands because it "may not be invoked against the SEC").[20]

19. The doctrine was expanded by some modern courts to apply to situations where the plaintiff has merely engaged in "the same sort of wrongdoing" as the defendant but the Supreme Court has rejected this broadened construction as inappropriate for cases arising under federal regulatory statutes. *Id.* (citing *Perma Life Mufflers Inc. v. International Parts Corp.*, 392 U.S. 134, 138, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)).

20. *See also United States v. American Electric Power Service Corp.*, 218 F.Supp.2d 931, 938 (S.D.Ohio 2002) (rejecting unclean hands defense in Clean Air Act case because the de-

fense "may not be used against the United States to prevent it from enforcing its laws to protect the public interest."); *United States v. Vineland Chemical Co.*, 692 F.Supp. 415, 423 (D.N.J.1988) ("unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare.").

Defendants rely on *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752 (9th Cir.1991), for the proposition that the unclean hands defense can apply to the government. The court observed that the doctrine "should not be strictly enforced when to do so would frustrate a substantial public interest," and it declined to

■ Moreover, even if the unclean hands doctrine could apply to the United States when it acts to enforce RICO, the Defendants have not alleged the fundamental requirement of that defense: they have not alleged that any of the Government conduct upon which they rely is wrongful, inequitable, or a manifestation of bad faith. Although their Memorandum in Opposition claims that the Government has committed the "same sort of wrongdoing" as is alleged against them, Defendants in fact do not allege that the Government fraudulently misrepresented anything or that it committed mail and wire fraud.

■ *In pari delicto* is similarly unavailable. "One of the premises on which the *in pari delicto* doctrine is grounded is that 'denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.'" *Pinter*, 486 U.S. at 634, 108 S.Ct. 2063 (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985)). A party "truly *in pari delicto*" is one who has himself "violated the law in cooperation with the defendant." *Id.* at 636, 108 S.Ct. 2063. Here, there is no claim that the Government has "violated the law in cooperation with the defendant[s]".

The Government's motion for summary judgment as to the affirmative defenses of unclean hands and *in pari delicto* is **granted** because these defenses are insufficient as a matter of law.

## IV. CONCLUSION

The Government is entitled to summary judgment as to the affirmative defense of waiver because the Defendants did not offer evidence to show that the Government waived its right to bring a civil RICO suit, or any other suit, against them in "unmistakable terms". The Government is not estopped from pursuing its RICO claims because the Defendants have not set forth material facts concerning any misrepresentations by the Government about whether it would enforce RICO against them. Laches is unavailable as a matter of law in a suit brought by the United States acting in the public interest. Finally, the unclean hands and *in pari delicto* defenses fail as a matter of law because these defenses are not available against the Government when it acts in the public interest; even if these two defenses were available, summary judgment would still be appropriate because Defendants have not alleged any wrongdoing by the Government. Consequently, the Government's Motion is granted in whole.[21]

An **Order** will accompany this opinion.

---

apply the doctrine to the EEOC because that agency's enforcement of Title VII "effectuated a compelling governmental and public interest." *Id.* at 753. Similarly here, to permit the unclean hands defense in this case would frustrate the compelling public interest in the Government's enforcement of RICO.

The other case relied upon by Defendants, *United States v. Hughes Ranch, Inc.*, 33 F.Supp.2d 1157 (D.Neb.1999), is also inapposite. *Hughes Ranch* relied on *Recruit U.S.A.* in concluding that the unclean hands doctrine may be applied to the government. *Id.* at 1171. However, that court also refused to apply the doctrine because it had "no legal or factual merit" in the case. *Id.* The court

concluded that the defense "is predicated upon inequitableness or bad faith" and neither one existed. *Id.*

Thus, in the two cases relied upon by Defendants, the federal courts refused to apply the doctrine of unclean hands against the government.

21. The Court understands that the Government's motion addresses the availability of the enumerated affirmative defenses as they apply to liability issues. This decision does not address the applicability of the doctrines discussed to issues related to equitable relief, should liability be established.

### ORDER # 476

Upon consideration of the United States' Motion for Partial Summary Judgment on Defendants' Equitable Defenses of Waiver, Equitable Estoppel, Laches, Unclean Hands, and *In Pari Delicto,* the Defendants'·Opposition, the United Reply, and the entire record herein, it is this 23rd day of January, 2004,

**ORDERED,** that the United States' Motion for Partial Summary Judgment on Defendants' Equitable Defenses of Waiver, Equitable Estoppel, Laches, Unclean Hands, and *In Pari Delicto* is **granted**; and it is further

**ORDERED,** that the following affirmative Defenses are **dismissed**:

*Philip Morris USA, Inc. (f/k/a/ Philip Morris Incorporated):* Affirmative Defenses 3 and 5;

*Altria Group, Inc. (f/k/a/ Philip Morris Companies Inc.):* Affirmative Defenses 4 and 6:

*R.J. Reynolds Tobacco Co.:* Affirmative Defenses 2, 3, and 10;

*Brown & Williamson Tobacco Co.:* Affirmative Defenses 3, 4, 5 and 15;

*British American Tobacco (Investments) Limited:* Affirmative Defenses 4, 5, and 6;

*Lorillard Tobacco Company:* Affirmative Defenses 10, 11, 41, and 43;

*The Liggett Group Inc.:* Affirmative Defenses 4 and 29;

*Counsel for Tobacco Research–U.S.A.:* Affirmative Defenses 2, 3, 4, and 16;

*The Tobacco Institute:* Affirmative Defenses 3 and 5; and it is further

**ORDERED,** that any other Affirmative Defense that depends, in part or in whole, on the equitable defenses of waiver, equi-table estoppel, laches, unclean hands, or *in pari delicto* is hereby **dismissed.** ·